# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **MARTIN H. AUSSENBERG** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Shelby Equity No. 100699-1 |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **BRUCE S. KRAMER, DAVID J.** | ) | Appeal No. |
| **COCKE, AND BOROD AND** | ) | 02A01-9411-CH-00262 |
| **KRAMER,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

FILED

May 28, 1996

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
## AT MEMPHIS, TENNESSEE

## THE HONORABLE C. NEAL SMALL, CHANCELLOR

For the Plaintiffs/Appellants:

Stanley J. Kline
Memphis, Tennessee

For the Defendants/Appellees:

J. Alan Hanover
Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

In this case, Plaintiff, Martin H. Aussenberg ("Aussenberg"), appeals the trial court's valuation of his former partnership's work-in-progress and accounts receivable as well as its finding regarding Aussenberg's interest in the partnership's accounts receivable and work-in-progress. We affirm the decision of the trial court.

In March 1988, Aussenberg and Defendants, Bruce S. Kramer ("Kramer") and David J. Cocke ("Cocke"), formed a partnership for the practice of law under the name of Borod and Kramer. In June 1991, Aussenberg was asked to leave the partnership. A dispute subsequently arose concerning the value of the partnership's assets and the percentage of those assets owed to Aussenberg. Aussenberg filed a complaint in the Chancery Court of Shelby County asking *inter alia* that he receive one third of all of the partnership's assets. Kramer and Cocke denied that Aussenberg was entitled to a one-third share of accounts receivable and work-in-progress and maintained that Borod and Kramer historically had determined each partner's interest in accounts receivable and work-in-progress according to a formula that took into account each partner's origination, productivity, and collections.

The Chancellor referred the case to a Special Master to make a recommendation as to the value of the partnership's assets and liabilities. All other issues, including the amount of each partner's share, were reserved for further determination by the Chancellor.

At the Master's hearing, Aussenberg presented Alex Ivy, a certified public accountant, who valued the partnership's accounts receivable.[1] On cross-examination, Ivy admitted that the percentages generated in his analysis had been based on his assumption that the partnership's books had been periodically purged of bad debt. Kramer and Cocke presented the testimony of Vicki Whitley, the bookkeeper of the former partnership. Ms. Whitley testified that, contrary to Ivy's assumption, the books of the former partnership were not regularly purged of bad debt. Finally, Kramer and Cocke testified about the collectibility of the disputed accounts receivable with which they were familiar. The testimony of Kramer and Cocke regarding collectibility was unrefuted.

On October 22, 1992, the Master determined that accounts receivable and work-in-

---

[1]Ivy testified that, in order to determine the fair market value of the accounts receivable, he had used an historical approach based upon the actual billing experience of the former partnership. Under this approach, Ivy first established a percentage allowance for bad debt by taking the historic ratio of bad debts to gross billings for 1989 and 1990. Then, to arrive at the fair market value of the accounts, he multiplied the bad debt allowance by the gross billings of the former partnership for 1991.

progress were not routinely evaluated and some bad debts had not been written off the partnership's books. He also found that certain accounts receivable were not collectible. Finally, the Master made a recommendation as to the value of the accounts receivable and work-in-progress as of the date of the dissolution of the partnership.

The Chancellor adopted the Report of the Master regarding the value of the accounts receivable and work-in-progress. He also found that the parties historically had based their yearly division of the profits on a formula that took into account each partner's productivity, client origination, and collections. Using the formula presented by the defendants, the Chancellor found that Aussenberg was entitled to 18.12% of the partnership's total accounts receivable and work-in-progress, less stipulated deductions. After making the appropriate deductions, the Chancellor found that Aussenberg was entitled to $17,714.42.

In this appeal, Aussenberg first contends that the Master erred in permitting Kramer and Cocke to testify regarding the value of accounts receivable and work-in-progress and that the Chancellor erred in considering their testimony. Aussenberg contends further that Kramer and Cocke should be estopped from claiming that certain accounts receivable were worthless when the same accounts receivable were later submitted to a bank in order for the firm to receive credit. Finally, Aussenberg asserts that the Chancellor erred in determining that his share of the partnership's accounts receivable and work-in-progress was 18.12%.

The trial court's reference of certain matters to the Master can affect our standard of review. A concurrent finding of fact by a Master and a trial court is conclusive on appeal, except where the finding is on an issue not appropriate for referral, where it is based on an error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence. *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. App. 1995). In this case, Aussenberg does not ask us to directly review the Master's factual findings; rather, he alleges that the Master erred in permitting Kramer's and Cocke's testimony on the value of the accounts receivable. This raises a mixed question of fact and law. *See Bubis v. Blackman*, 435 S.W.2d 492, 498 (Tenn. App. 1968).

2

Aussenberg argues that the Master erred in allowing Kramer and Cocke to testify about the value of certain accounts receivable and work-in-progress because both were unqualified to testify about the value of these assets.  He also contends that the trial court erred in crediting Kramer and Cocke's testimony over the testimony of Aussenberg's expert witness, Alex Ivy.

A trial court is given considerable latitude in the admission of evidence and will be reversed only for an abuse of discretion. **Steele v. Ft. Sanders Anesthesia Group, P.C.**, 897 S.W.2d 270, 275 (Tenn. App. 1994).   The Master allowed Kramer and Cocke to testify only about the collectibility of accounts with which they were familiar.  They did not offer their opinions as to the value of these accounts.  Instead, they testified about the history of certain accounts and offered their explanation as to why the partnership had considered these accounts uncollectible.  The ultimate valuation of these accounts was left to the Master.   Moreover, Aussenberg's own expert, Ivy, testified that in order to conduct a proper valuation of the disputed accounts "you would have to look at those specific accounts and talk to the individuals involved with that account and determine the reasonable collectibility of it."   Aussenberg has cited no case law which would preclude a partner from testifying about whether certain partnership accounts are collectible.  We find no abuse of discretion by the Master or the trial court in permitting the testimony of Kramer and Cocke.  The trial court is affirmed on this issue.

Aussenberg also argues that the Master and the trial court erred in declining to credit the testimony of Aussenberg's expert, Mr. Ivy.  Ivy testified that his valuation of the accounts receivable and work-in-progress was based on the assumption that the partnership's books were regularly purged at the end of every fiscal period.   Kramer and Cocke proffered the unrefuted testimony of the bookkeeper of the former partnership, who testified that bad debts had not been routinely written off  the partnership's books.  The Master discredited Ivy's valuation of the accounts receivable, finding that it was based upon the invalid assumption that the partnership's books were purged periodically of uncollectible accounts.  We find no error in this determination.

Aussenberg argues that Kramer and Cocke should be estopped from claiming that certain accounts receivable were uncollectible when these accounts were among those later included as collateral for bank loans for the new partnership.  Whether the undisputed facts warrant application of the doctrine of estoppel is a question of law; therefore, our review of this issue is

3

*de novo* upon the record without a presumption of correctness. ***See Marriott Employees' Fed. Credit Union v. Harris***, 897 S.W.2d 723, 727 (Tenn. App. 1994). Kramer and Cocke provided a list of accounts receivable, dated March 20, 1991, to Sovran/Nations Bank (the "Bank") on June 16, 1992, in order to obtain financing for the remaining partnership. This list included accounts which Kramer and Cocke had asserted were uncollectible in the March 26, 1992 hearing before the Master. Aussenberg asserts that including these accounts in this list amounted to a representation to the Bank that the accounts had value, contrary to Kramer's and Cocke's testimony before the Master. He argues that this constitutes a fraud on the court and that Kramer and Cocke should be estopped from taking contradictory positions regarding the value of the accounts. Kramer and Cocke maintain that the inclusion of these accounts receivable in the list submitted to the Bank was not a representation as to their value, that it was merely a response to the Bank's request for a list of accounts receivable, and that the doctrine of estoppel does not apply.

The elements of equitable estoppel as related to the party estopped are (1) conduct which amounts to a false representation or concealment of material facts, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently asserts; (2) the intention or expectation that such conduct will be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. The elements as related to the party claiming the estoppel are (1) a lack of knowledge and an inability to learn the truth as to the facts in question; (2) reliance on the conduct of the estopped party; and (3) action based thereon which changes his position prejudicially. ***Consumer Credit Union v. Hite***, 801 S.W.2d 822, 825 (Tenn. App. 1990) (quoting ***Callahan v. Town of Middleton***, 292 S.W.2d 501, 508 (Tenn. App. 1954)).

Under Tennessee case law, estoppel is not favored, and it is the burden of the party invoking the doctrine to prove each element. ***Robinson v. Tennessee Farmers Mut. Ins. Co.***, 857 S.W.2d 559, 563 (Tenn. App. 1993); ***Bokor v. Holder***, 722 S.W.2d 676, 680 (Tenn. App. 1986). As set forth below, Aussenberg failed to present sufficient evidence to support his claim of estoppel.

Aussenberg failed to provide the trial court with any evidence that Kramer and Cocke falsely represented to the Bank or to any other entity that the disputed accounts receivable had

4

value. While there is evidence that Kramer and Cocke gave the Bank a list of accounts receivable in order to obtain financing, the list is not included in the record. Moreover, Kramer and Cocke presented the testimony of a Bank officer which suggested that the Bank did its own aging to determine the proper value of the accounts receivable and that the Bank did not rely on Kramer and Cocke to value them. This testimony was unrefuted. Thus, Aussenberg has failed to establish the first element of estoppel, a false representation. We need not address the other elements of estoppel, such as whether Aussenberg established reliance. The trial court is affirmed on this issue.

Finally, Aussenberg argues that the Chancellor erred in determining that he was entitled to an 18.12% interest in the partnership's accounts receivable and work-in-progress. He asserts that the preponderance of proof presented at trial supported his claim that he was entitled to a one-third share of these assets. Under T.R.A.P. 13(d), our review of this issue is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence proves otherwise. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The partnership did not have a written partnership agreement. In the absence of a written agreement, Aussenberg contends that he was entitled to an equal share of the assets of the partnership pursuant to T.C.A. § 61-1-124(b)(1). He notes that he was listed as taking a one-third share of the partnership's profits on the firm's 1991 K-1 form 1065 filed with the Internal Revenue Service.

Kramer and Cocke, on the other hand, assert that the trial court properly followed the partners' agreed-upon formula in determining that Aussenberg was entitled to 18.12% of accounts receivable and work-in-progress. At trial the bookkeeper for the former partnership, as well as Cocke and Kramer, testified that the firm historically had used a formula to determine a baseline distribution of profits that was based on a weighted average of each partner's collections, productivity and origination. Cocke and Kramer then stated that, after the formula was applied, often there would be some modification of each partner's percentages based on "soft factors," such as whether the partner was a managing partner or participated in recruitment. Aussenberg denied that there was an agreement but acknowledged that the partners split the profits based on production, origination, collections and the "soft factors" mentioned by Cocke and Kramer.

5

Tennessee law does not require a partnership agreement to be in writing to be effective. *See Hoppen v. Powell*, 600 S.W.2d 736, 738-39 (Tenn. App. 1980) (applying specific provisions of Uniform Partnership Act when oral partnership agreement was silent as to those provisions). The evidence presented at trial preponderates in favor of the trial court's finding that the parties had orally agreed to use the baseline formula to determine the distribution of profits and that Aussenberg was entitled to an 18.12% share of the partnership's accounts receivable and work-in-progress pursuant to this formula. Apparently there had been deviation from this formula at times when the parties orally agreed to a modification based on "soft factors," such as time spent on firm management. In this case, there was no such agreed modification, so the trial court's application of the agreed-upon baseline formula was appropriate. We affirm the trial court on this issue.

Affirmed. Costs on appeal are taxed against the Appellant, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**

# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| MARTIN H. AUSSENBERG | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Shelby Equity No. 100699-1 |
| | ) | |
| vs. | ) | |
| | ) | |
| BRUCE S. KRAMER, DAVID J. | ) | Appeal No. |
| COCKE, AND BOROD AND | ) | 02A01-9411-CH-00262 |
| KRAMER, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

FILED

**August 8, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## ORDER

Appellant Aussenberg has filed a petition for rehearing in this cause. Included in the petition is an assertion that Judge Holly Kirby Lillard should have recused herself from consideration of this matter. This assertion is based on "Judge Lillard's previous employment with the Defendants/Appellees" as a summer law clerk fifteen years ago in 1981. Appellant Aussenberg contends that Judge Lillard's failure to recuse herself on this basis violates the Tennessee Constitution and the Code of Judicial Conduct.

It should be noted that Appellant Aussenberg did not raise the issue of recusal until after this Court had issued a ruling adverse to Aussenberg. More important, the argument presented by counsel for Aussenberg borders on the absurd. We do not perceive that a judge's employment as a summer law clerk fifteen years earlier is a basis for recusal.

After reviewing the Petition to Rehear in its entirety, the Petition is denied. Costs are taxed to the Appellant, for which execution may issue if necessary.

Enter this _____ day of July, 1996.


_____
**HOLLY KIRBY LILLARD, J.**


_____
**W. FRANK CRAWFORD, P.J., W.S.**


_____
**DAVID R. FARMER, J.**