# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

MICHAEL MEYERS,                    )
                                   )
    Plaintiff/Appellant,           )     Davidson Chancery No. 95-2518-I
                                   )
**vs.**                            )
                                   )
MARK A. COLE,                      )     Appeal No.  01A01-9710-CH-00543
                                   )
    Defendant/Appellee.            )

**FILED**

**August 19, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE IRVIN H. KILCREASE, JR.

For the Plaintiff/Appellant:

Stephen M. Miller
Nashville, Tennessee

For the Defendant /Appellee:

George E. Copple, Jr.
Nashville, Tennessee

**REMANDED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This case involves the dissolution of a partnership formed to create and sell music. The trial court determined the partners' respective rights in some properties and ordered some items sold. We remand.

Plaintiff/Appellant Michael Meyers ("Meyers") and Defendant/Appellee Mark Cole ("Cole") formed an oral partnership in late 1992 named MusicArts. The partnership initially produced and sold musical "jingles" for use in advertising. Meyers wrote the jingles to meet the advertising needs of clients solicited by Cole. After some time, Cole tried to expand the focus of the partnership to include the creation of video footage to correspond with the jingles. This led to a rift between the partners.

The dispute intensified in early February 1995 and culminated in a series of faxes and telephone conversations between the parties. On February 13, 1995, Meyers advised Cole that "[a]s of today, you don't represent me in a business capacity. . . . I think a clean break is necessary at this time." Meyers and Cole subsequently divided the partnership's business equipment between them. They did not attempt to dispose of the name MusicArts, the customer list, or the audio and video tapes containing edited music/commercials ("the DAT tapes").

Meyers filed suit on August 15, 1995, seeking a declaratory judgment as to the parties' respective rights. Cole filed an answer and counterclaim seeking a complete accounting of the revenues and expenses of the partnership. The trial court referred the matter to the Clerk and Master for a full hearing. The trial court adopted the Clerk and Master's findings as the judgment of the court.

The trial court found that the parties had been acting under an oral partnership agreement. The partnership dissolved on February 13, 1995 when Meyers withdrew, but did not terminate on that date. Eight months after dissolution, while this suit was pending, Cole created advertising using works developed during the partnership for two former clients of the partnership. The trial court did not require Cole to account to Meyers or to the partnership for the income from these projects. The trial court found, however, that Meyers had breached his fiduciary duty toward Cole by not sharing profits from jobs begun before the dissolution, but completed afterwards. The court further found that the DAT tapes should not be divided or copied and ordered them to be sold and the proceeds divided equally between the parties. At the sale for the DAT tapes, Cole bid $100. Meyers objected to the sale because the court had not determined the rights of the respective parties in the tapes. He

also refused to bid at the sale because he claimed the sale was not "commercially reasonable." Meyers moved for a stay of the sale of the tapes pending appeal, and this motion was granted.

On appeal, Meyers argues that the trial court's findings are incomplete. Meyers contends that the trial court failed to require Cole to account for transactions which occurred after this litigation began, involving works developed during the partnership. Meyers notes that Cole's transactions with former MusicArts clients involved music that Meyers created during the parties' partnership. Meyers argues that, consequently, Cole is accountable to Meyers or to the partnership for the profits from these projects. Meyers also claims that the trial court erred in ordering the sale of the DAT tapes without first determining who owned the copyrights to the creative works on the tapes.

Cole initially argues that Meyers is prohibited from raising the issue of Cole's post-dissolution projects because the order of reference to the Master did not include that issue. While the order of reference did not list Cole's projects as an issue to be determined, the issue was in fact considered by the Master and the trial court. The Master's report indicates that it considered "the amount of funds owing either party after winding up of partnership affairs." Moreover, Meyers noted this issue in his objections to the Master's report. Thus, we find the issue of what funds, if any, Cole owed to Meyers for use of the music created during the partnership was presented to the trial court and may be raised on appeal.

Cole argues that the money collected from Meyers' jobs was partnership property because those projects were "in the pipeline," or in progress, as of the date he alleges the partnership terminated, February 13, 1995. Cole asserts that he did not solicit or perform any work for former MusicArts clients until approximately two months after this lawsuit was filed and at least eight months after the alleged termination. Consequently, Cole argues that profits from these projects did not have to be accounted for during the winding up of the partnership.

In this appeal, Meyers asks this Court to review the trial court's decision regarding profits Cole received on projects begun after dissolution and finished before termination of the partnership. "A concurrent finding of fact by a Master and a trial court is conclusive on appeal, except where the finding . . . is based on an error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence." *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. App. 1996) (citing *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. App. 1995)). The issues raised

2

by Meyers in this appeal are mixed questions of fact and law, subject to review. *Id.* (citing *Bubis v. Blackman*, 58 Tenn. App. 619, 632, 435 S.W.2d 492, 498 (1968)); *see Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). In this case, no presumption of correctness attaches to the trial court's findings, and "this Court has great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

The rules governing dissolution and winding up of partnerships are well settled in Tennessee:

> Upon dissolution, a withdrawing partner who has not wrongfully dissolved the partnership may require a winding up of the partnership affairs, and share proportionately in both profits and losses until termination, when all partnership affairs are settled. In this event, the respective interests of the partners in the partnership, including profits and losses, do not change until final settlement (termination).

*Shepherd v. Griffin*, 929 S.W.2d 336, 343 (Tenn. App. 1995) (citation omitted) (citing *Shepherd v. Griffin*, 776 S.W.2d 119, 122 (Tenn. App. 1989)). "Dissolution is caused: . . . [b]y the express will of any partner" when the partnership is indefinite in term. Tenn. Code Ann. § 61-1-130(1)(B) (1989). In this case, the partnership dissolved on February 13, 1995, the date on which Meyers told Cole that Cole no longer represented Meyers in the business. However, dissolution does not terminate the partnership. *See Shepherd v. Griffin*, 776 S.W.2d 119, 121 (Tenn. App. 1989). In this case, there was no partnership agreement controlling the dissolution, distribution of assets or accounting upon dissolution of the partnership. Consequently, the Uniform Partnership Act governs. *Hoppen v. Powell*, 600 S.W.2d 736, 738 (Tenn. App. 1980).

Under the Tennessee Uniform Partnership act, the partnership continues until the winding up of the partnership is completed, and the partnership is terminated. Tenn. Code Ann. § 61-1-129 (1989). The process of winding up includes an accounting and distribution of the partnership assets. "Until termination of the partnership the interests of the partners in partnership assets, profits, liabilities and losses do not change, even though they exist at or occur after dissolution." *Shepard*, 776 S.W.2d at 122 (citing *Young v. Cooper*, 30 Tenn. App. 55, 203 S.W.2d 376, 386 (1947); 20 Tenn.Jur. Sec. 43). The partners' interests "remain unchanged until the partnership is terminated." *Id.* (citing 59A Am.Jur.2d Partnerships, § 809 (1987)).

Therefore, the partnership did not terminate in February of 1995. Termination does not occur until the assets are equitably distributed. Tenn. Code Ann. § 61-1-129 (1989). In this case, termination has not yet occurred, in part due to the ongoing litigation. An unresolved issue of law and fact remains as to Cole's use of the works created by Meyers during the term of the partnership in two projects undertaken on Cole's behalf, the Burford project and the Cunningham project. In the Burford project, Cole used a jingle and/or music created during the partnership which had been previously used in another television commercial for that client. The new advertisement incorporated elements of the earlier project and carried the same theme. In the Cunningham project, Cole made minor changes to a prior MusicArts television ad for the same client. The Cunningham project also utilized works created during the partnership. In addition, Cole acknowledged that he had assumed that he could continue to use the DAT tapes for solicitation of business independent of the partnership.

The resolution of the issue involving Cole's use of works created by Meyers during the partnership depends in part on another issue: the rights of the parties in the copyrights to the copyrightable works developed during the partnership. Meyers contends that the trial court did not determine what rights the parties or the partnership acquired in the copyrights to the music or commercials recorded on the DAT tapes.

Meyers raised the issue after the report of the Clerk and Master was issued. The trial court considered the DAT tapes to be a partnership asset because it ordered the tapes sold and the proceeds divided evenly. By implication, then, the trial court must have considered the partnership to be the owner of the copyrights to the tapes. This, too, is a mixed issue of law and fact, properly reviewable by this court. *See Aussenberg v. Kramer*, 944 S.W.2d at 369.

Copyrights are governed by federal copyright law, and any provision of the Copyright Act of 1976 ("the Act"), 17 U.S.C.S. § 101, *et seq.* (1994), which deals with the issue at hand would preempt state law. § 301(a). The provisions of the Act which deal most closely with the issue in this case concern the doctrines of (1) a "work made for hire" in § 101 and § 201(b), and (2) transfer of ownership in a copyright in § 201(d) and § 204(a). Creative works developed during the partnership could be deemed partnership property under one of these two doctrines.

Section 101 reads in pertinent part that "[a] 'work made for hire' is--(1) a work prepared by an employee within the scope of his or her employment." § 101. In the absence of an express written

4

agreement, a "work made for hire" is owned by the employer. 17 U.S.C.S. § 201(b). In *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the Court indicated that the phrase "scope of employment" should be interpreted according to the "general common law of agency, rather than on the law of any particular State." *Id.* at 740. The Court listed factors relevant to the issue of whether a hired party is an employee under agency law. *See id.* at 751-52. These factors include the skill required to create the work, the source of the instrumentalities and tools used to create the work, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring out and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits, and the tax treatment of the hired party. *Id.* *Community* did not involve a partnership, and it is unclear whether these factors would be pertinent in the context of a partnership.

We found no cases determining whether the "works made for hire" doctrine applies to works created by a partner during the partnership. Consequently, we look to caselaw in analogous situations. For example, *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir. 1987), involved the issue of whether federal anti-discrimination laws (Title VII, ADEA, and FLSA), which protect "employees," should apply to a partner within the context of a general partnership.

The court in *Wheeler* reviewed the many ways in which the characteristics of a partner differ from those of an employee, such as the right to share in profits and participate in management decisions, the right to act as agent for the other partner, and unlimited personal liability for partnership losses. It noted that the partner's "participation in profits and losses, exposure to liability, investment in the firm, partial ownership of firm assets, and her voting rights--plus her position under the partnership agreement and partnership laws--clearly placed her in a different economic and legal category." *Id.* at 276. It ultimately determined that Congress intentionally used the term "employee" in these statutes to exclude partners in a general partnership. *Id.* at 276.

This case involves an analogous situation. An employee who creates works for an employer functions in a more protected position than a partner; he is shielded from unlimited personal liability for the organization's obligations. As in *Wheeler*, this fact is significant, as are the other characteristics that distinguish an employee from a partner. The Copyright Act includes no

5

indication that Congress intended the "works made for hire" doctrine to apply to works created by a partner during the course of the partnership, and we decline to do so. Therefore, we hold that the works created solely by Meyers are not "works made for hire" as defined in 17 U.S.C.S. § 101, and that the partnership does not own the copyrights by virtue of this doctrine.

In the absence of application of the "works for hire" doctrine, the copyright to an original work such as the music in this case "vests initially in the author or authors of the work." 17 U.S.C.S. § 201(a). However, the copyright to the music created by Meyers could be owned by the partnership if ownership was transferred to the partnership by agreement of the partners. Under the Copyright Act, such a transfer would be valid only if the "instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights." 17 U.S.C.S. §204(a).

There is little caselaw dealing with the ownership of the copyright on original works in the context of a partnership. In *Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984), two parties entered into a written partnership agreement to write a book. One partner agreed to provide the capital and supervise the business end of the venture and the other agreed to write the book. Because of the written partnership agreement, the *Oddo* court held that the partners were co-owners of the partnership's assets, including the copyright in the book.

In *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994), the court discussed at length the law regarding copyrights. In *Konigsberg*, two movie producers met over lunch with a popular novelist. During the lunch meeting, they orally agreed that the novelist would create a manuscript which could be developed further within several media. No written agreement was ever signed. Later, a dispute arose concerning the copyright to the manuscript and a lawsuit was filed. The *Konigsberg* court distinguished this situation from *Oddo*, in which there was a written partnership agreement. The *Konigsberg* court construed § 204(a) of the Act as requiring a <u>written</u> agreement which clearly divests the creator of a work of his copyright. *Id.* at 357-58. Therefore, *Konigsberg* held that the oral partnership agreement was not sufficient to transfer ownership of a copyright to the partnership. *Accord Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

Under the Copyright Act and the reasoning in *Konigsberg*, in the absence of any evidence that Meyers transferred in writing ownership of the copyright to the partnership, Meyers' rights in the works created solely by him during the partnership were not transferred to the partnership and remain vested in Meyers. If both partners significantly contributed to creation of the music or

6

commercials, under copyright law, they may be construed as co-owners of the copyrights to those works. *See* 17 U.S.C.S. § 101 (definition of "joint work"); *Oddo v. Ries*, 743 F.2d at 633.

In this case, the record is insufficient for this Court to determine ownership of the copyright to the works at issue. Consequently, we remand the case for the trial court to determine the respective contributions of each partner to the creation of the copyrightable works during the term of the partnership, whether there is written evidence of a transfer of the copyrights from either party to the partnership, and any other issues pertinent to ownership of the copyrights. Once ownership of the copyrights is determined, the trial court must determine the proper accounting of each partner for the use of the music or commercials during the winding up of the partnership.

The cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed equally against Appellant and Appellee, for which execution may issue if necessary.

 

**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P. J., W.S.**

**ALAN E. HIGHERS, J.**