# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 12, 2000 Session

## WENDELL O. MANDRELL, ET UX, ET AL. v. WILLIAM T. MCBEE, ET AL.

### Appeal from the Chancery Court for Rutherford County
### No. 88-25    Hon. Robert E. Corlew, III, Chancellor

### No. M2000-00108-COA-R3-CV - Filed November 30, 2000

This is a partnership dispute occasioned by the misappropriation of partnership funds by two of the five partners. In an earlier appeal in this case, this Court affirmed the judgment of the Trial Court awarding damages to the innocent partners but increased the amount of that judgment. This Court then remanded the case to the Trial Court, which heard further proof and made findings as to the distribution of partnership assets. In this appeal, a Defendant partner seeks reversal of the Trial Court's valuation and accounting of the partnership assets and computation of prejudgment interest. We find the concurrent findings of fact by the Special Master and the Trial Court are supported by material evidence in the record, and that the Special Master and the Trial Court properly interpreted this Court's earlier Opinion. Accordingly, we affirm the decision of the Trial Court in all respects.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J. and CHARLES D. SUSANO, JR., J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the Appellant Marshall Preston Sweeney.

G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the Appellees Wendell O. Mandrell and Patrick T. Vaden.

## OPINION

## Background

Plaintiffs Wendell Mandrell and Patrick Vaden were partners with William Peacock, William McBee and Defendant Marshall Sweeney in a partnership created in 1986 to build and manage an office building in downtown Murfreesboro.[1] There is no written partnership agreement. Sweeney and Peacock had worked with McBee on other projects. Mandrell and Vaden did not know McBee. McBee offered to construct the building at cost in return for a twenty percent interest in the partnership. The other partners accepted McBee's proposal and agreed that each of the five partners would own twenty percent of the partnership. The partnership borrowed $575,000 from First City Bank on November 20, 1986. Between February 10 and May 22, 1987, either Sweeney or McBee made eight draws on that loan totaling $575,000. All of those funds were deposited in McBee's personal checking account. Mandrell, Vaden, and Peacock did not learn that the loan proceeds had been exhausted until late May 1987. Since the building was not complete when the funds were exhausted, Mandrell, Vaden, Peacock and Sweeney filed suit against McBee alleging that McBee had misrepresented the construction costs and misappropriated a portion of the construction loan proceeds. McBee revealed during discovery that he and Sweeney had agreed to use part of the loan proceeds to pay off other unrelated business debts. Mandrell, Vaden and Peacock then amended the Complaint to allege that both McBee and Sweeney had misappropriated partnership funds.

In 1990, McBee was convicted of conspiracy to commit armed robbery and pled guilty to mail fraud and owning an illegal gambling business. As a result of that conviction, he did not appear to defend this civil suit, and on December 18, 1990, the Trial Court entered an order granting Mandrell, Vaden, Peacock and Sweeney a $264,950 default judgment against McBee in this case. In February 1991, the Trial Court heard evidence against Sweeney and found that McBee and Sweeney had conspired to pay themselves $20,000 each from the construction loan and that they were jointly and severally liable to the partnership for the $40,000 they diverted. The Trial Court awarded Mandrell and Vaden a $40,000 judgment against Sweeney. Mandrell and Vaden appealed, asserting that they were entitled to more than the $40,000 judgment against Sweeney. On appeal, this Court found that evidence in the record proved that McBee and Sweeney had diverted $91,176.03 rather than $40,000 from the partnership. This Court held that "[i]n the accounting of the partnership assets, Messrs. Mandrel and Vaden may use the $91,176.03 judgment as a set-off against Mr. Sweeney's share of the partnership assets when the partnership is dissolved." By Judgment entered September 21, 1994, this Court remanded the case "for the entry of an order awarding Messrs. Mandrell and Vaden a judgment against Mr. Sweeney in the amount of $91,176.03 plus prejudgment interest calculated from April 21, 1987." Thereafter, the parties began winding up and dissolution of the partnership, which led to further allegations of wrongdoing.

---

[1] A more detailed recitation of the underlying facts in the earlier appeal can be found in the opinion of this Court at *Mandrell v. McBee,* 892 S.W.2d 842 (Tenn. Ct. App. 1994).

On July 7, 1995, Sweeney filed a "Supplemental Complaint" in which he alleged that Mandrell and Vaden had "engaged in acts of subterfuge and self-dealing, involving the partnership property which constitutes a breach of the fiduciary duty owed by those individuals to the partnership, and contrary to the requirements of Tennessee Code Annotated, § 61-1-120(a)." Sweeney specifically alleged that (1) Mandrell and Vaden had leased the partnership property, i.e., the office building, to Guaranty Mortgage Company, in which Mandrell is a principal, at less than fair market value; (2) Mandrell and Vaden had re-financed the bank note with First City Bank under terms which allowed First City Bank to foreclose on the original note, thereby "diverting the partnership asset from the control of the Court and the benefit of the general partnership;[2] and (3) Sweeney's capital account with the partnership had been adjusted in a manner which would work to the benefit of Mandrell and Vaden and to the detriment of Sweeney if the building were sold for less than the debt owed against it. Sweeney sought an injunction to prevent foreclosure of the original note and liquidation of the partnership office building "in any manner inconsistent with the previous directions of the Court compelling sale and distribution of net profits." Sweeney requested the appointment of a Special Master to make determinations of fact as to the fair market rental value of the building, the reasonable expenses incurred in operation of the building, the actual rents received, the adjustments in the partners' respective capital accounts and reasons therefore and "final adjustment of the parties' respective entitlements and obligations based upon the foregoing points, and the prior orders of the Court." Sweeney also asked for damages, immediate sale of the office building by public auction if necessary and payment of the resulting proceeds to the Clerk of the Court pending resolution of the issues.

Mandrell and Vaden opposed Sweeney's Motion to File Supplemental Complaint and application for preliminary injunction. They argued that Tennessee Rule of Civil Procedure 15.04 is available only to supplement an original complaint, and not as a device belatedly to assert a counterclaim; that the supplemental complaint, even if otherwise appropriate, should be denied as not timely filed; and that Sweeney, having been found to have defrauded Mandrell and Vaden, comes to the Court with unclean hands. They argued that the injunction should not be granted because Sweeney had failed to show irreparable harm or likelihood of success on the merits. They further argued that McBee, also a partner, had judgment liens in excess of $600,000 on record in the Register's Office of Rutherford County, and that the foreclosure of the first mortgage lien on the office building:

> . . . will eliminate all subsequent encumbrances, including those judgment liens. If the property is sold in any other manner, it must be sold subject to those outstanding liens. Of course, no one will purchase a property subject to those encumbrances . . . the foreclosure provides the best available means of realizing the fair market value of the property upon sale.

---

[2]Mandrell and Vaden argue in their brief that Sweeney's complaint about their dealings with First City Bank should fall on deaf ears because Sweeney has been a Director of First City Bank throughout this litigation.

After hearing arguments of counsel and considering the legal briefs of the parties, the Trial Court entered an Order finding that the then-present state of the pleadings afforded to all of the parties essentially the same relief sought in the Supplemental Complaint, and denying the request by Sweeney to file the Supplemental Complaint. The Trial Court permitted the foreclosure to proceed but ordered that all proceeds be held by First City Bank as Trustee, pending further orders of the Trial Court, and restrained that bank from distributing any sale proceeds to any payee for any reason pending completion of the partnership settlement requirements and other orders of the Trial Court. The Trial Court ordered that unless the fair market value of the property could be agreed on by the parties, the parties were to agree on an appraiser, who would report his findings to the Trial Court in writing. The Trial Court further ordered that it be announced at the foreclosure sale that the Trial Court retained jurisdiction to confirm or reject the sale, and any inadequate purchase price sharply contrasting with the current fair market value of the real estate could be rejected at the discretion of the Trial Court.

Foreclosure and sale of the property was held on September 5, 1995. A partnership consisting of Mandrell, Vaden and Peacock bought the property for $575,000, there being no other bidders. On October 3, 1995, Sweeney filed a Motion to Reject the Proposed Sale, in which he argued:

> [the selling price was] . . . patently insufficient. At the trial of the case in 1988, the property was represented as having a value of approximately $630,000. Defendant asserts that it has at least increased at a rate of 10% per year, and that accordingly, the sale to Mr. Mandrell, a partner, should be voided as inadequate.

Sweeney attached a proposed contract for sale of the property to Adams & Parks Investments for $600,000 as proof that the selling price to the former partners was inadequate. The Trial Court heard the Motions on November 17, 1995, and on December 4, 1995 entered an Order confirming the foreclosure sale to the former partners for $575,000 and ordering First City Bank to pay over to the Clerk and Master the net proceeds of the sale, to be held pending further order of the Trial Court. On December 28, 1995, the Trial Court permitted the Mandrell, Peacock and Vaden partnership to sell the property to Adams & Parks Investments for $600,000.

Mr. Sweeney then filed a Motion for Appointment of Special Master to receive proof on the valuation and accounting of the partnership. Mandrell and Vaden responded that they had no objection to the appointment of a Special Master but asserted that certain issues raised by Sweeney in his Motion had already been determined by the Court of Appeals and were the law of the case. A Special Master was appointed on April 15, 1996, and a hearing before the Special Master was held on June 16, 1997.

The Special Master heard the testimony of partners Mandrell, Vaden, Peacock and Sweeney, as well as that of Carol Adcock, Chief Financial Officer of Guaranty Trust, which

managed the partnership property;[3] Donald Hundley, the CPA who prepared the partnership tax returns; and Larry Sims, licensed real estate broker, who obtained the offer of Adams & Parks Investments to purchase the partnership property for $600,000. The Special Master also considered numerous exhibits, including all of the income tax returns of the partnership, the lease agreements and other business records of the partnership, income and expense spreadsheets, and a 1987 appraisal indicating the appraiser's opinion that the property was valued at $630,000 at that time. After hearing all the testimony and examining all the exhibits, the Special Master requested that the parties submit proposed findings of fact and conclusions of law. One year later, on July 14, 1998, Counsel for Sweeney submitted Defendant's proposal, and counsel for Mandrell and Vaden submitted Plaintiffs' proposal on August 25, 1998. The Special Master filed his report on June 17, 1999, in which he accepted Plaintiffs' Proposed Findings of Fact and Conclusions of Law "as if included herein verbatim..." and made specific findings of fact: that the Mandrell, Peacock, Vaden partnership purchased the interest of McBee; that the facts, including the accounting, do not support a finding of breach of fiduciary duty or self dealing by Mandrell or Vaden; and as provided in the previous decision of the Court of Appeals, "Mandrell and Vaden may use the $91,176.03 judgment as a set-off against Mr. Sweeney's share of the partnership assets."

Still undeterred, Sweeney filed in the Trial Court his "Exceptions to the Master's Report," accompanied by his earlier-submitted Proposed Findings of Fact and Conclusions of Law. The Trial Court then filed a letter opinion on November 17, 1999, in which the Court opined:

> The major issue appears to be the question as to whether the decision of the Court of Appeals was intended to award damages to the partnership, or to the Plaintiffs individually. The Court finds clearly from the record that the intention of the Court of Appeals was to make an award to the parties Plaintiff, and for the Court to determine that such an award should instead be in favor of the partnership would consititute modification of the Appellate Court, which this Court is not empowered to entertain.
>
> The underlying issue further is the question whether the parties Plaintiff or Parties Plaintiff and Mr. Peacock properly purchased the partnership interest of partner McBee. This issue was considered by the Court previously at the time the original decision was entered, and this Court contemplates that such consideration was given by the Court of Appeals as well.
>
> Although not argued at great length, the Court has considered the proposed Findings of Fact and Conclusions of Law submitted by the Defendant with regard to further Damages which the Defendant alleges were caused by the foreclosure on which the Plaintiffs

---

[3]Mandrell is President and CEO of Guaranty Trust.

insisted. Even assuming that the foreclosure was inappropriate, the damages asserted appear to the Court to be speculative.

The [Trial] Court will approve the Findings and Conclusions of the Special Master, adopting the Findings and Conclusions suggested by the Plaintiffs.

On February 14, 2000, the Trial Court, upon motion of Plaintiffs, ordered that the funds held by the Clerk and Master be disbursed to Plaintiffs, and it appears the funds were disbursed on that date. Sweeney filed a Motion on March 2, 2000, for a Stay pending resolution of appeal to this Court, and a Supplemental Motion arguing that no dollar-specific sum which takes into account the attorney's fees and set-offs described in the Special Master's Report had ever been entered, and therefore the judgment was not a final judgment within the meaning of Rule 55.[4] Mandrell and Vaden subsequently filed a "Plaintiffs' Computation of Interest" in the Trial Court, and the Trial Court, on May 10, 2000, entered an order reflecting the total amount of the Judgment:

> ORDERED that the Judgment heretofore entered in this cause be, and is hereby, amended to reflect that the amount of the judgment presently outstanding as of April 19, 2000, is as to the Defendant Sweeney TWO HUNDRED NINE THOUSAND FOUR HUNDRED SEVENTY and 60/100 ($209,470.60), which consists of the original judgment amount of NINETY-ONE THOUSAND ONE HUNDRED SEVENTY-SIX and 03/100 ($91,176.03) together with prejudgment interest thereon from April 21, 1987, to date, less a credit of NINE THOUSAND TWO HUNDRED FORTY-EIGHT and 65/100 Dollars ($9,248.65), which represents the Defendant Sweeney's partnership interest in the funds on deposit with the Clerk and Master in the amount of ONE HUNDRED FOUR THOUSAND SEVEN HUNDRED NINETY-FIVE and 89/100 ($104,795.89) less attorneys fees and costs in the amount of FIFTY-EIGHT THOUSAND FIVE HUNDRED FIFTY-TWO and 65/100 Dollars ($58,552.65). Said judgment amount continues to accrue interest at the rate of TWENTY-TWO and 45/100 Dollars ($22.45) per day.

Mr. Sweeney has appealed to this Court, and raises the following issues, which we quote:

Issue No. 1.   The proper definition and application of the "interest" of partner William McBee in the original partnership asset (i.e., now the funds held by the Clerk).

---

[4]Mandrell and Vaden argued, among other things, that this issue was moot because the funds had already been distributed before the motion was filed.

Issue No. 2.   Do the facts pertaining to the nine year management, and eventual foreclosure, of the partnership office building by partners Mandrell, Vaden, and Peacock support a finding of breach of fiduciary duty, or self-dealing?

Issue No. 3.   Upon a finding of self-dealing, or breach of fiduciary duty, what losses should be accounted and compensated to the original (five-person) partnership?

Issue No. 4.   Does the previous decision of the Court of Appeals require that Sweeney and McBee pay (or "set-off") their respective shares of the $91,176.03 obligation to the entire (five-person), original partnership?

Issue No. 5.   Have the Plaintiffs correctly computed the Judgment owed by the Defendant/Appellant Sweeney?

## Discussion

In this case, the Trial Court's Order referencing certain matters to the Special Master, the Special Master's Report, and the Trial Court's Order adopting that Report affect our standard of review on appeal. A concurrent finding of a Special Master and a Trial Court is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. *Long v. Long,* 957 S.W.2d 825, 828 (Tenn. Ct. App. 1997); *Aussenberg v. Kramer,* 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996); *Archer v. Archer,* 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995).

Defendant Sweeney first asks this Court to determine "the proper definition and application of the 'interest' of partner William McBee in the original partnership asset." Such a determination is not the function of this Court. According to our standard of review, we must search the record for any material evidence supporting the determination of the Special Master and the Trial Court on this issue, and if there is any material evidence, that determination is conclusive. The Special Master, in adopting the Findings of Fact and Conclusions of Law of the Plaintiffs, found that Mandrell, Vaden and Peacock purchased the partnership interest of Mr. McBee, and, therefore Mandrell, Vaden and Peacock each own a one-third interest in McBee's partnership share. The proof in the record shows that Mandrell, Vaden and Peacock obtained a default judgment against McBee for $264,950 on December 18, 1990, based on misappropriation of partnership funds. Mandrell, Vaden and Peacock formed a new partnership and purchased the original note from First City Bank. McBee had numerous judgment liens against him, including the deed of trust in favor of First City Bank, which was prior to any of the other liens. The practical effect of the foreclosure of the note and purchase by Mandrell, Vaden and Peacock was "to wipe out entirely all of the judgment liens against the property." The Special Master and Trial Court held that Mandrell, Vaden and Peacock thereby purchased McBee's interest in the partnership. We find material evidence in the record

supporting the determination of the Special Master and Trial Court that McBee had no interest remaining in the original partnership when that partnership was dissolved.

Sweeney next asks this Court to determine whether the facts pertaining to the nine year management, and eventual foreclosure, of the partnership office building by partners Mandrell, Vaden, and Peacock support a finding of breach of fiduciary duty, or self-dealing. Again, we are constrained to ascertain instead whether there is any material evidence in the record to support the findings of the Special Master as adopted by the Trial Court.

The record shows that the partnership was formed and the building was built for the purpose of providing larger office space for Guaranty Trust Company, of which Mandrell is the President and CEO. Before the building was built, the partners agreed upon rental amounts to be charged for each unit based upon the amount necessary to service the partnership indebtedness. Sweeney participated in the negotiations to set the rental rates for both Guaranty Trust and another renter, J. C. Bradford & Company. Sweeney's expert testified when deposed that the rents received by the partnership for the building exceeded fair market value for the space. He also testified that the property had a fair market value of $640,000, a price which could reasonably have been obtained if the property were left on the market for twelve months. A real estate commission would then be subtracted. The property was ultimately sold for $575,000 and then $600,000. We find there is material evidence in the record from which the Special Master and the Trial Court could have found that Mandrell and Vaden did not breach their fiduciary duty or engage in self-dealing in conducting the rental and sale of the partnership property. This finding renders moot Sweeney's third issue of what losses from such conduct should be accounted and compensated to the original partnership.

Sweeney next asks this Court, "does the previous decision of the Court of Appeals require that Sweeney and McBee pay (or 'set-off') their respective shares of the $91,176.03 obligation to the entire (five-person) original partnership?" This issue, which requires the interpretation of an earlier Opinion of this Court, is purely a question of law, and thus we review the decision of the Trial Court *de novo* with no presumption of correctness. *NCNB Nat'l. Bank v. Thrailkill,* 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). The Opinion of this Court at issue, filed September 21, 1994, states, as pertinent:

> In the accounting of the partnership assets, Messrs. Mandrell and Vaden may use the $91,176.03 judgment as a set-off against Mr. Sweeney's share of the partnership assets when the partnership is dissolved.

This Court opined and ordered that individual partners Mandrell and Vaden were entitled to a judgment against individual partner Sweeney, and that they could use that judgment as a set-off against individual partner Sweeney's share of partnership assets. Upon *de novo* review, we find the Trial Court properly interpreted that Opinion, and we find no support in the plain language of the Opinion for Sweeney's argument that he or McBee is entitled to any portion of the proceeds of Mandrell and Vaden's judgment against Sweeney.

Finally, Sweeney asks this Court to determine whether the Trial Court has correctly computed the dollar amount of the Judgment. He argues that "interest should cease accrual upon the sale of the partnership property, and application of the fund (by set-off) to the Plaintiffs' judgment." On September 21, 1994, this Court affirmed "prejudgment interest calculated from April 21, 1987." On remand, after six more years of litigation in this case occasioned by Sweeney's dissatisfaction with the manner of winding up and dissolution, none of which resulted in any findings that his allegations had any merit, the Trial Court ordered, on May 10, 2000, that prejudgment interest was to accrue "at the statutory rate of ten percent (10%) from the date of the misappropriation of the funds, being April 21, 1987, through the date of the order of this cause, and further at the same statutory rate post judgment." The award of prejudgment interest is within the sound discretion of the Trial Court and will not be disturbed on appeal absent an abuse of that discretion. *Brandt v. Bib Enterprises, Ltd.,* 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998). We find the Trial Court did not abuse its discretion, and we affirm the award of prejudgment interest.

Finally, Sweeney argues that the Trial Court's final Order, setting out the dollar amount of the Judgment, does not correctly compute the amount owed by Sweeney to Mandrell and Vaden. Specifically, Sweeney argues that $15,000 in attorney fees were paid out of partnership assets and a $39,000 partnership distribution should be subtracted from the amount of the judgment, and the interest thereon reduced accordingly. However, the Special Master found that no attorney fees were paid out of partnership accounts to fund the litigation. Moreover, there is no finding that the $39,000 distribution, which was occasioned by the refinancing of the building by the three partners, was a partnership asset. The Trial Court adopted those findings. There is material evidence in the record to support the findings, and there the matter ends.

## Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Marshall Preston Sweeney.

_____
D. MICHAEL SWINEY, JUDGE