IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 22, 2008 Session

**BEVERLY J. FARMER v. FIRST TENNESSEE BANK, N.A., ET AL.**

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-04-1740-2    Arnold Goldin, Chancellor**

_____

**No. W2006-02016-COA-R3-CV - Filed May 20, 2008**

_____

This appeal involves concurrent findings of a special master and a trial court. The bank foreclosed on property and the owner filed suit, alleging wrongful foreclosure. The chancellor referred the matter to a special master for the determination of two factual issues. The special master found that the account in question was in arrears at the time of the foreclosure, and that no payments were made that were not properly credited to the account. The chancellor adopted the findings of the special master and granted the bank's motion for summary judgment. The owner appeals, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., joined, and W. FRANK CRAWFORD, J., did not participate.

Beverly J. Farmer, Memphs, TN, *pro se*

R. Mark Glover, Chad D. Graddy, Memphis, TN, for Appellees

# MEMORANDUM OPINION[1]

## I.   Facts & Procedural History

Beverly J. Farmer ("Appellant") was one of several heirs who received from the estate of her late father, Essie Jackson, a house located in Memphis.  First Tennessee Bank ("First Tennessee" or "Appellee") held a mortgage on this property.  The loan payment amount due to First Tennessee each month was $221.60.  After Mr. Jackson's death, the heirs continued making payments on the loan, although they fell behind.  First Tennessee initiated the first foreclosure proceeding in January of 2003.  Ms. Farmer made partial payment, and First Tennessee chose not to proceed with the foreclosure.  First Tennessee initiated the second foreclosure in June of 2003.  First Tennessee likewise did not foreclose on the home on this date, however, because "one of the heirs" made a partial payment on June 23, 2003.

The account became delinquent again, and the third foreclosure was initiated in March of 2004.  According to First Tennessee, the account was four months in arrears.  The successor trustee of the property, David Kirkscey, a Memphis attorney, sent a letter to the heirs notifying them that foreclosure proceedings would be initiated within 30 days unless the account was paid in full.  On June 22, 2004, Mr. Kirkscey sent another letter to the heirs notifying them that foreclosure proceedings had been initiated.  The sale date was set for July 21, 2004, in order to give Ms. Farmer additional time to bring the account current.  The sale was then postponed again until August 25, 2004, upon Ms. Farmer's request for additional time. According to First Tennessee, the account remained three months overdue, and the sale proceeded on August 25.  Notice of the sale was published on three separate occasions.  First Tennessee purchased the property at the auction for $10,000.

Ms. Farmer filed suit in chancery court on August 27, 2004, alleging that First Tennessee wrongfully foreclosed on the property.  First Tennessee filed a motion for summary judgment, which Chancellor Arnold B. Goldin denied.  The chancery court then referred the matter to a special master, Deborah M. Henderson, to determine whether there was evidence to support Ms. Farmer's claim that she had made payments to First Tennessee that had not been credited to the account, and also to determine whether the account was in arrears at the time of the foreclosure.

The special master held a hearing on October 18, 2005.  Ms. Farmer represented herself. The crux of Ms. Farmer's argument was that she had made payments that First Tennessee failed to credit to her account.  Specifically, Ms. Farmer claims that in August of 2003, she made advance

[1] Rule 10 (Court of Appeals).  *Memorandum Opinion.*  This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion  it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

payments for three months, and that had First Tennessee properly credited these advance payments, then the account would not have been in arrears in August of 2004.

Mr. Kirkscey handled the foreclosure proceedings for First Tennessee. Mr. Kirkscey testified that at the first initiated foreclosure, Ms. Farmer brought his office a cashier's check in the amount of $1,490, and thus, First Tennessee chose to not foreclose on the home. Of that payment, $790 went to First Tennessee, with the remainder applied to the foreclosure costs. Mr. Kirkscey had no knowledge how First Tennessee applied this $790 to Ms. Farmer's account.

Mr. Kirkscey testified concerning the second initiated foreclosure:

The next time this was turned over to me for foreclosure was in June of 2003, and we went through the same procedure at that point . . . . [T]hat foreclosure was also cancelled. At that time, someone - - one of the heirs - - and we don't know who - - on June the 23rd of 2003, they paid 221 dollars and 60 cents to the bank. [A]lthough that did not cover the foreclosure costs, the bank decided to cancel the foreclosure, which I did.

As to the August 2004 foreclosure, Mr. Kirkscey testified as follows:
[T]he last foreclosure was originally set July the 21st of 2004, and I have indications here that someone called and they said they needed another 30 days to try to raise the money. And I talked to the bank, and we adjourned the [ ] last foreclosure from July the 21st of 2004 - - [ ] to August 25th of 2004, giving an additional 34 days to try to bring up - - you know, to bring it current.
. . .
And it was not brought current, and we went ahead with the sale on August 25th of 2004.

First Tennessee purchased the property, as no other individuals at the auction made a bid.

Ms. Farmer acknowledged that she made no payments from July 21 to August 25, the date of the foreclosure:

THE JUDGE:　　　[M]r. Kirkscey continued [the foreclosure] until August 25th so that some payments could be made. Now, my question is: Between July 21st of 2004 and August 25th of 2004, were any payments made, [ ] specifically to Mr. Kirkscey?

MS. FARMER:　　　No.

| | |
|---|---|
| THE JUDGE: | Okay. No payments were made to Mr. Kirkscey? |
| MS. FARMER: | No. |

Ms. Farmer did testify that on the morning of the foreclosure, she attempted to meet Mr. Kirkscey and pay him the full amount due, but Mr. Kirkscey was not in his office. In any event, Ms. Farmer's argument was that payments were not due during that time because she made "advance" payments in August of 2003, although she had no proof of these advance payments other than her testimony:

| | |
|---|---|
| THE JUDGE: | Is that your claim, Ms. Farmer, that you gave Mr. Kirkscey a cashier's check that he has testified [at this hearing that] he did not receive? |
| MS. FARMER: | That's my claim, and that was also his testimony on September 29th, 2004.[2] |
| . . . | |
| THE JUDGE: | [Y]ou gave that to him in August of 2003, but you do not know where you bought the cashier's check? |
| MS. FARMER: | No. |
| THE JUDGE: | You do not have a copy of the cashier's check? |
| MS. FARMER: | No, no. |
| THE JUDGE: | And you didn't get a receipt from Mr. Kirkscey? |
| MS. FARMER: | Yes. It's with the copy of my cashier's check. |
| THE JUDGE: | Well, where is all of that? |
| MS. FARMER: | It's - - I can't find it. I've looked up and down. I gave it to my sister, who I believe threw it away. |

Mr. Kirkscey testified that the only payment he received from Ms. Farmer was the cashier's check in the amount of $1,490, which he received during the first initiated foreclosure proceeding.

---

[2] Ms. Farmer mentions on several occasions in her brief the "injunction hearing," in which she claims that Mr. Kirkscey gave a different account than his testimony at the special master's hearing. No transcript was taken at that "injunction" hearing, nor did Ms. Farmer file a statement of the evidence concerning this hearing. *See generally **In re M.L.D.**, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) ("[A]ppellant has the duty to prepare the record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal."). Thus, we will not consider statements in her brief.

The special master found that the mortgage was in arrears in the amount of $1,245.59 at the time of the foreclosure, and that Ms. Farmer presented no evidence that she made payments that First Tennessee failed to credit to her account. The special master's report recommended that First Tennessee should be allowed to take possession of the property.

Ms. Farmer filed an objection to the special master's report on July 10, 2006. First Tennessee filed a response to Ms. Farmer's objection and also filed a motion for summary judgment. On September 15, 2006, the court adopted the special master's findings and granted First Tennessee's motion for summary judgment. The chancellor's order states in relevant part:

> The Court adopts the findings of the Special Master[.] . . . The Court finds that the Plaintiff has failed to produce any evidence to support her allegation that the Special Master's report and findings should not be adopted in full by this Court. Additionally, this Court finds that the Plaintiff has produced no evidence to support her allegations asserted in the Complaint. Specifically, this Court finds that First Tennessee has proven, through the introduction of evidence and affidavit testimony, that there is no genuine issue of material fact in this case, and that the foreclosure of Plaintiff's home was not wrongful as a matter of law.

. . .
This appeal timely followed.

## II. ISSUES PRESENTED

Ms. Farmer presents several issues for our review; however, the only issue we need address is whether the trial court erred in adopting the special master's report.[3] First Tennessee contends that this appeal should be dismissed because Ms. Farmer failed to comply with Rule 6 of the Rules of

---

[3] Ms. Farmer presents five issues in her brief. All issues except issue four pertain to the special master's report. Issue four, which is not discussed anywhere else, states: "Was the Plaintiff's deprivation of the rights to Discovery with the legal rights to the Production of Defendant's Documents to inspect an act to conceal evidence?" We will not address this issue. Similarly, various constitutional "catch phrases" are used throughout Ms. Farmer's brief, but no constitutional arguments are presented, and thus, we will not address them. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006) ("It is not the function of the appellate court to research and construct the parties' arguments.").

the Court of Appeals and Rule 27 of the Tennessee Rules of Appellate Procedure.[4]  For the reasons stated below, we affirm.

### III.  STANDARD OF REVIEW

When dealing with concurrent findings of a special master and chancellor, we generally do not disturb such findings on appeal.  Tenn. Code Ann. § 27-1-113.  "A concurrent finding of fact by a Master and a trial court is conclusive on appeal, except where the finding is on an issue not appropriate for referral, where it is based on an error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence." *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996) (citing *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995)).  The standard of review is similar to the standard employed in the review of a jury verdict: "we must affirm if there is any material evidence to support the trial court's concurrence." *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995) (citations omitted).  We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV.  DISCUSSION

As previously discussed, the chancery court referred this case to the special master for the determination of two factual issues: 1) whether the account was in arrears at the time of the August 2004 foreclosure, and 2) whether Ms. Farmer made payments that First Tennessee failed to credit to the account.  The special master found that the account was in arrears and that Ms. Farmer's account had been properly credited.  From the record, we find that these factual findings are supported by material evidence.  Other than her own testimony, Ms. Farmer offered no proof that she made any payments to Mr. Kirkscey that were not credited to her account.  The special master specifically asked Ms. Farmer if she had any documentation, including a copy of the alleged cashier's check.  Ms. Farmer stated that she gave the documentation to her sister, who threw it out.  Mr. Kirkscey testified that Ms. Farmer did not give him such a payment, or any other payments besides the $1,490 cashier's check for the initial foreclosure.  As to the arrearage amount, Ms. Farmer presented the special master with a statement dated August 10, 2004, which showed an arrearage amount of $1,245.59.  Thus, we find material evidence in the record to support the concurrent findings of the special master and the chancellor.

---

[4] First Tennessee points out that Ms. Farmer only cites to the record 3 times throughout her 14 page brief. First Tennessee complains that Ms. Farmer's Argument section "does not track the 'statement of the issues' section in any coherent way, does not appear to even address of all [sic] the issues raised . . . and does not provide any specific factual or legal arguments as to why, based on the existing record, the decision of the court below should be overturned." As already stated, we will only address the main issue of the special master's report, as the other issues raised by Ms. Farmer are not mentioned again, nor does she support them with any authority.  We do not believe this appeal should be dismissed, however, as Ms. Farmer is representing herself and we are willing to afford her some leeway.

## V. Conclusion

We affirm for the reasons stated herein. Costs of this appeal are taxed to Appellant, Beverly J. Farmer, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.