Heney G. Smith, J.,
delivered the opinion of the Court.
The complainants are the heirs of Abram Bayliss. They exhibit this bill against the defendant, Williams, to set aside a deed of conveyance of lands made by them to him; the equity alleged, is, that Williams stood in a relation of trust and confidence to them in respect of the lands, and obtained the deed from them by “undue influence.-” At the time the conveyance was made, a suit was pending between the complainants and creditors of their deceased father, whereby the creditors sought to subject the lands to the payment of the debts of the father. Upon the conveyance being made, Williams took up the defense of - the creditors suit, and succeeded in defeating it, and securing the title of the lands against it.
Williams paid to the complainants for the land, $600, and expended in costs, counsel fees, etc., about $500 more. The lands were actually worth some twelve to fifteen thousand dollars.
Equity will set aside a deed procured by undue influence. To call forth the aid of equity on such ground, a relation of confidence must subsist between the parties, and an influence possessed by the one over the other, by reason of such confidence, and an un *442 due or improper exercise of such influence, in procuring the deed from the confiding party. The relation may be of any kind which implies confidence, as trustee and beneficiary, attorney and client, parent and child, guardian and ward, physician and patient, nurse and invalid, confidential friend and adviser, indeed, any relation of confidence between persons which gives one dominion or influence over the other: Willard Eq. Jur., 169; Adams Eq.; 2 Eq. Lead. Cas., 503; American Notes to Huguenin vs. Baseley; 4 My. and Cr., 277; 2 Dev. and Bat. Eq., 241; 2 H. L. Cas., 750; Adams’ Eq., 185.
Such relation subsisted between Williams and the heirs of Bayliss. Though Williams was not, by employment for compensation, their attorney or agent, he put himself in that relation by reason of friendship and gratuitous service proffered by him, and accepted by them, and of confidence upon and by them in him; and this in respect of the defense of the title of the land, then in jeopardy, and now the subject of the present suit.
By reason of that relation, he had influence over them. Express proof of such influence need not be made. It is implied from the relation. Express proof, however, is shown in this case. Such influence was unduly exercised.
The proof shows that Williams was a land speculator — a lawyer well versed in the “land law” — a plausible, capable and shrewd man; on the other hand, the heirs of Bayliss were young, inexperienced, and two of them married women. Williams being a law *443 yer, and having investigated the suit between the heirs and the creditors of their deceased father, must have been well informed of the condition of the suit, and the probabilities as to the result, and of the. value of the chances as to securing the land. On the other hand, the heirs must have been uninformed and ignorant as to all these particulars. They considered their chances of securing the land so unpromising, that they gave scarcely any attention to the suit, nearly or quite abandoned it, and were unwilling to expend any money in the defense of it. The land was actually worth from ten to fifteen thousand dollars. The chances of successful issue of the suit; were nearly a certainty. Incumbered as was the land by suit, the price paid by Williams for it, $600, and the expenses of the suit, was grossly inadequate.
Here then, we have, experience and craft against inexperience and youth, knowledge against ignorance, and gross inadequacy of price; so gross as to shock the sense of proportion. Coupling these circumstances with the confidence reposed in Williams, by the heirs, and the influence possessed by him over them, it admits of little doubt, that the unconscionable trade made between them was the result of undue influence exercised by him upon the heirs.
As between Williams and the heirs, therefore, th deed of conveyance made by them to him must be set aside, and declared void. But Williams has sold and conveyed the tract of 175 acres to Faulkner, who sold and conveyed it to Malone, who sold and conveyed it to Turner. Turner sets up for defense, that Faulkner *444 was an innocent purchaser. The deed from Williams to Faulkner recites the consideration of $4,000, paid by the latter to the former, for the land. Other than such recital in the deed, no proof is made of the actual payment of the consideration by Faulkner to Williams. And the question is, whether such recital is proof of payment. If not, the defense of innocent purchaser . fails.
As between Williams on the one side, and persons taking by conveyance under him, the recital in his deed of payment of the consideration is evidence against him. It is his receipt for the money. In some cases, and perhaps generally,, a greater operation and effect would be given to it than of a receipt.' It would be an es-toppel that could not be averred against by him.
The recital of payment of the consideration in the deed from Williams to Faulkner, must be deemed prima facie evidence of such payment.
The authorities to this point, are in conflict, and I cannot undertake to reconcile them, for lack of time, and access to the books containing them.
The current in Tennessee is favorable to the admission of the recital as prima Jade evidence, in cases somewhat analogous to the one in hand.
In Gaugh, etc., vs. Henderson, 2 Head, 628, Vance conveyed the land to Alicia Kernahan, an infant, reciting in the deed the payment of the consideration by Alicia. A judgment creditor, of Andrew Kernahan, father of Alicia, caused the land to be sold under execution, on the judgment, alleging that Andrew Kerna-han paid the consideration, and procured' the deed to *445 be made to Alicia, to defraud bis creditors, which gave him a resulting trust in the land, -which was subject to sale under execution. Upon the issue, whether Alicia or Andrew paid the money, it was held, the recital in the deed of payment by Alicia was evidence that the money was paid by her. Perhaps this point in the case, ought not to be deemed as authoritatively settled. It does not appear to have been carefully discussed or considered.
Cocke vs. Trotter, 10 Yerg., 213, was: Cocke claimed the slave in controversy, as administrator of Trotter, the father. Trotter, the son, claimed the slave, under bill of sale made to him by Miles, which recited the consideration paid by Trotter, the son. The administrator of the father claimed that he, the father, bought the slave from one James W. Cocke, and afterwards, for some purpose, put the slave in the hands of Miles, to convey to the son, and without any consideration. The recital in the bill of sale made by Miles, that Trotter, the son, paid the price of the slave, was held to be evidence of that fact, in the controversy as to the title, between the son and the administrator of the father.
Haywood’s Heirs vs. Moore, 2 Hump., 584, was: Judge Haywood conveyed lands by deed, to his daughter, Harriet, reciting the consideration as received from her of |1,000. The conveyance was to Harriet, for life, remainder to her children. Harriet afterwards married Moore, had a child, which died; and afterwards, she died. Moore surviving her, claimed to take the fee by inheritance from the child; and the brothers of Harriet claimed to take by inheritence from Harriet, *446 who took the remainder in fee by inheritance from her child. The result turned upon the question, whether the child derived his estate from Judge Haywood by gift, or from Harriet. If from Harriet, upon his death, she was his heir. If from Judge Haywood, Moore, the father, was the heir of the child. The issue was, whether Harriet paid the $1,000 to Judge Haywood for the land. It was held, that the recital in the deed by Judge Haywood to Harriet, was evidence that she paid the consideration of $1,000. The report and opinion in this case, is absurd. Above is presumed to be a correct statement of the case.
Jackson vs. McChesney, 7 Cow., 360 was: Viele sold and conveyed the land to Groves; Groves conveyed the land back to Vicio, by way of mortgage, to secure payment of the consideration. This mortgage was, for a time, not recorded. Afterwards, and before the recording of the mortgage deed, Groves sold and conveyed it to Wright, for $300. It was thus a contest between a prior and subsequent grantor, the deed of the latter being recorded before the recording of the deed of the former. The subsequent grantee was put to the defense, that he purchased and paid for the land, without notice of the prior deed. To maintain the defense, it was necessary to prove payment of the consideration. The recital in the deed was held evidence of the payment.
Wood vs. Chapin, 3 Kernan, 509, was this: Helm sold , and conveyed to Wood. Before registration of the deed, Helm sold and canveyed to Thornton, who caused his deed to be registered. Thornton’s title was best, *447 if he paid the consideration, without notice of the prior deed to "Wood. The recital in Thornton’s deed, of payment of consideration, was held evidence of the fact of payment, as between him and Wood.
Medley vs. Mask, in 4 Ired. Eq., 339, was: Bill by assignee of the equity of redemption, to pay the mortgage debt and redeem the land. The bill was against mortgagor and mortgagee. It was held that Chancery will not give the relief sought, without proof of consideration paid for the assignment, and that the recital of the consideration and its payment contained in the deed of assignment, was competent evidence, as against the mortgagee.
On the other hand, Kimball vs. Fenner, 12 New Hamp., 248, was: A creditor of the vendor of land, assailed the deed as being fraudulent as against existing creditors of the grantor. The recital of payment of the consideration in the deed made by the vendee, was held not to be evidence of the fact of payment, as against creditors existing at the time the deed was made, and who assail it as fraudulent.
In the American Notes to Bassett vs. Nosworthy, 2 Eq. Lead. Cases, side page 22, 3 Am. Edition,- 126, the annotators say: “In general, those who claim as purchasers without notice, must prove payment of the purchase money, by direct and- independent evidence, and cannot rely on the recitals of the deed, as affording a scintilla of' proof that the - consideration has been actually paid.” Reference is made to several cases to support such statement. -We have access to only three of the cited cases. .
*448 One of tbe cases, is tbat already mentioned, 12 New Hamp., 248; another of the citations is Nolen vs. Gray, 16 Ala., 725. That case was between a prior and subsequent vendee, under deeds of the same vendor conveying the same land, the second deed being recorded before the first. It was held that the recital of payment of the consideration contained in the second deed, was not evidence of the payment. The principle on which the decision was rested, was, that the declarations of vendor made after sale, are not competent to defeat the title of the vendee.
The other of the three cases at hand, is, DeVendal vs. Malonis, Executors, in 25 Ala. Reports. It was a contest between a prior and subsequent mortgagee of the same land. The subsequent mortgagee assailed the prior mortgage, on the ground that it was made to defraud creditors, and so void. It was held, that the recital of the debts contained in the first mortgage deed was not evidence of the existence and good faith of the debts recited. Here, both parties claimed under the same grantor, and the subsequent grantee assailed the prior grant. In the case in 16 Ala., of Nolin vs. Gray, the position of the contesting parties was reversed; the first grantee was assailing the second grant. The cases which have been detailed from 7 Cow. and 3 Kern., are in conflict with the case of Nolin vs. Gray. In the New York cases, the prior grantee was assailing the subsequent grant, and the recital in the subsequent grant was held competent evidence; and so the case in 12 New Hampshire, -, is discordant with the case of *449 Gaugh vs. Henderson, in 2 Head’s Rep. The former held the recital in the deed assailed as fraudulent, was not evidence against the attaching creditor; while Gough vs. Henderson, held such recital evidence in the like case.
But I will not pursue the question farther. The current in Tennessee, is, to admit the recital as evidence. The contrary rule may be more sound upon principle. Such recital seems little, if anything, more than a receipt for money, or an admission or declaration of a third person, in cases where the controversy of the party claiming under the deed, is with a stranger to the deed. As against the grantor, the recital is his own receipt or admission; and on proof of the deed, his receipt or admission is proven. And so, generally, as against persons directly in privity with the grantor, and under him, the like rule may be proper.
In the present case, the recital must be held to be evidence. The Bayliss heirs conveyed by deed to Williams. Williams conveyed by deed to Faulkner. No fraud is alleged against the deed to Faulkner. None is alleged, as between Williams and Faulkner. The claim or equity of the Bayliss heirs, is a latent claim or equity, and it is against Williams rather than against Faulkner. Such case may fairly enough come within the rule held in the current of decisions in Tennessee, referred to, and the recital held to bo evidence, as between parties standing in the relation of the parties in this record.
It is not our purpose to decide now that in all cases where the defense of innocent purchase./ is r/ Ad *450 on, tbe recital will be evidence for tbe party relying on such defense. As to persons absolutely strangers to tbe title of tbe party making sucb defense, and as to creditors assailing a deed as made to defraud tbem, and in like cases, it will be time enough to decide, wben tbe case is presented wbicb exacts decision to that point.
Tbe defense of innocent purchaser, is set out as to Faulkner, with sufficient certainty and completeness, in tbe allegation of tbe defendant, Turner, in his answer.
And tbe requisite proof is made to sustain the defense, by means of • the recital of payment contained in tbe deed.
The delay of the complainants in filing- their bill attracts observation. The bill was filed soon after Williams procured a. decree defeating the bill filed by Bayliss’ creditors, to subject tbe lands' to tbe payment of their demands. But we do not discover anything in tbe record, wbicb suffices to create tbe conviction that tbe. heirs awaited tbe decision of that case. So far as is shown, tbe delay to file tbe bill was not caused with tbe view to await tbe decision.
As to tbe 175 acre tract held by Turner, tbe same conveyed by Williams to Faulkner, the bill will be dismissed. As to tbe other two tracts, tbe title will be divested out of Williams and vested in tbe complainants.
Williams received from Faulkner, for the 175 acre tract, $4,000. He has, therefore, no equity to be reimbursed by tbe complainants, for $1,100 or thereabouts, expended by him, in tbe payment to tbe com *451 plainants, and in tbe expenses of tbe suit by the creditors of Bayliss against tbe lands.
As tbe deed by Williams to Faulkner, has defeated tbe equity of tbe complainants to the 175 acre tract, and they have thereby lost tbe land, Williams will be held to account to tbe complainants for tbe value of tbe land, as sold by him, to-wit: $4,000, less tbe amount paid by Williams to tbe complainants for tbe several tracts, and tbe costs and expenses paid by him in tbe defense of the suit of the creditors of Bayliss, tbe father; and abating also, one third of the value of tbe 175 acre tract; it appearing thqt heretofore, one third of tbe tract has been recovered from Williams by one of tbe three heirs of Bayliss, tbe father, in a suit by such heir for tbe purpose, or was owned by that heir: 2 Head, 259.
Decree according to this opinion; and remand tbe cause to tbe Chancery Court, for such proceeding there as may be suitable to execute tbe decree.