**Mary Ann Reilly IACOMETTI, Appellee,**

v.

**Margaret Reilly FRASSINELLI, Individually and as Administratrix of the Estate of William J. Reilly, Jr. and Administratrix of the Estate of Mary D. Reilly, Appellant.**

Court of Appeals of Tennessee,
Western Section.

Jan. 8, 1973.

Certiorari Denied by Supreme Court
May 7, 1973.

Leonard D. Pierotti, Memphis, for appellant.

Henry M. Beaty, Jr., Memphis, for appellee.

NEARN, Judge.

This is an appeal from the order of the Chancellor which decreed that certain funds in joint savings accounts, with right of survivorship, did not pass to the survivor, but were assets of the estate of the deceased joint owner.

At the outset, the writer of this opinion will note that this case originated in Part II of the Chancery Court of Shelby County, over which Court I, at one time, presided. The Technical Record reveals that this suit was filed and a Pro Confesso taken prior to the time I assumed that Chancery bench. However, the Technical Record does also reveal that during the time I did so preside, a consent order was entered by me, as Chancellor, setting aside the Pro Confesso. No other action was taken by me nor were any hearings of an

nature ever had by me in this cause. During the oral argument of this case on appeal, these facts were made known to counsel and no objection has been made to my competence to now hear this matter.

Complainant, Mary Ann Reilly Iacometti, and the defendant, Margaret Reilly Frassinelli, are sisters and the only children of Mary D. Reilly, who died intestate in March, 1966, in Shelby County. At the time of Mary D. Reilly's death, there existed two joint savings accounts, and one joint checking account all with the right of survivorship, in the joint names of the deceased and Margaret Reilly Frassinelli.

The subject of this controversy is the approximate $20,000.00 that was in those accounts.

In October, 1968, complainant, who is a non-resident of this State, filed her bill styled "Original Bill to Recover Assets of Estate". Named as defendant was Margaret Reilly Frassinelli, individually and as Administratrix of the estates of both her mother and her father. (Mr. Reilly had preceded his wife in death about a year and Mrs. Reilly had been appointed Administratrix of his estate. Upon Mrs. Reilly's death, defendant Frassinelli acted as Administratrix of the estates of both parents.) Basically, the Bill charges (a) that the deceased did not intend to make a gift of the joint account funds to the defendant, but intended that the funds be used by defendant only for the paying of the deceased's bills in case she were too ill to do so and defendant therefore held the funds under a constructive trust, (b) in the alternative, a confidential relationship existed between the defendant and the deceased, and defendant exercised dominion and control over the deceased, and (c) lack of opportunity of competent, independent advice on the part of the deceased when the transfer of funds to a joint account was made.

By her Answer, defendant denied that a trust was intended to be created, denied that the transfer was not intended to be a gift; denied the confidential relationship as alleged existed and that independent advice was needed; but averred that the transfer of funds was made at the sole insistence of the deceased and that if independent advice were needed, the deceased had ample opportunity for same.

After hearing the proof, the Chancellor found as follows:

"That the fund in the joint account was wholly deposited by the deceased, Mary D. Reilly; that, under such circumstances and notwithstanding the right of survivorship provision, it must appear that the defendant has given consideration or acquired the funds on deposit as a gift from the deceased. The burden of proof to show a gift is upon the donee and the Court finds that the defendant, upon whom the burden of proving the gift is placed, has failed to carry the burden of proof to show that the sum of $19,892.80, which was in the form of savings accounts in the joint names of Mary D. Reilly and defendant, constituted a gift to defendant. That the Court having found that there was no gift, the sum of $19,892.80 is thus found to be an asset of the estate of Mary D. Reilly and, therefore, defendant shall pay over to the estate of Mary D. Reilly the sum of $19,892.80, plus any accrued interest thereon since the date of withdrawal of said funds by said defendant.

It further appears to the Court that if there was a contract between the complainant and defendant regarding the disposition of the joint account funds, that such is outside the pleadings in this case and, therefore, not to be considered by this Court.

It further appears to the Court, and the Court so finds, that there was no undue influence or fraud on the part of the defendant on the deceased, Mary D. Reilly, in connection with depositing of the funds in the joint accounts with right of survivorship."

The Assignments of Error are:

"1. The Chancellor erred in finding that notwithstanding the right of survivorship provision, the funds on deposit in joint accounts between Mary D. Reilly and the Appellant, did not constitute a gift to the Appellant.

2. The Chancellor erred in finding that the transfer of funds into joint accounts by Mary D. Reilly did not constitute a gift to Appellant because Appellant failed to carry the burden of proving a gift."

It will be noted that the Chancellor found that there was no undue influence or fraud exercised by Mrs. Frassinelli on her mother, Mary D. Reilly, in connection with the depositing of the funds in the joint accounts with the right of survivorship. The Chancellor could not have made any other finding on this issue than the one he made. Even the complainant testified that she considered her mother competent and able to handle her own affairs. From all the proof it can only be concluded that Mrs. Reilly was an independent minded woman. There is no proof at all to the contrary. Mrs. Reilly did not make her home with the defendant but lived alone. The uncontradicted proof is that approximately one year prior to her fatal illness, Mrs. Reilly, without aid, assistance or direction from anyone, went alone to the banks and obtained joint account signature cards. Mrs. Reilly then called the defendant over to her home on Garland and requested that she sign the joint account cards.

■■■ The proof further negates any conclusion that a confidential relationship, in the legal sense, existed between Mrs. Reilly and the defendant. The proof does indicate that a normal mother-daughter relationship existed, but that relationship is not the same as the confidential relationship in law, the existence of which raises the presumption of invalidity as to dealings between parties occupying such confidential relationship. Miller v. Proctor (1940 M.S.) 24 Tenn.App. 439, 145 S.W.2d 807.

There is no proof whatsoever in this record that at the time the joint accounts in question were created, or for that matter at any time, defendant exercised any "dominion and control" over the mental processes or physical acts of Mrs. Reilly. We do not understand the "confidential relationship" spoken of by the Supreme Court in the case of Turner v. Leathers (1950) 191 Tenn. 292, 232 S.W.2d 269, to be merely a mutual relationship of confidence. It is that relationship where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party, such as nurse and invalid, trusted business adviser and friend etc. Bayliss v. Williams (1869) 6 Cold. 440, 46 Tenn. 440; Miller v. Proctor, supra. Proof of the existence of the normal family relationship between a parent and adult child, standing alone, does not give rise to an inference or presumption that either one exercises any dominion and control over the other.

■ As we have shown, the Chancellor found that the defendant had committed no fraud and had exercised no undue influence. In this finding we concur. The Chancellor made no definite finding concerning the existence or non-existence of a "confidential relationship". We find that there is no proof of such relationship and therefore hold that it did not exist.

The Chancellor was of the opinion that since the funds in question were wholly the funds of Mary D. Reilly immediately prior to the creation of the joint account, such fact placed the burden of proof on the defendant to show the funds on deposit were a gift from the deceased, notwithstanding the written survivorship agreement.

The joint account agreement with the First National Bank of Memphis, immediately above the parties' signatures, provided as follows:

"This agreement, entered into by and between or among the undersigned, wit-

nesseth that the account opened in the First National Bank of Memphis, Tennessee, in our names is to be held as a joint account with full right of survivorship, and it is understood that this account shall constitute no part of the estate of any one of us who may die first and that the heirs and distributees shall have no interest therein, but that the whole title thereto shall be vested in the survivor or survivors and the Bank is directed to recognize said survivor or survivors as the sole owners thereof and allow the survivor or survivors the right of unrestricted withdrawal. Funds on deposit in the account shall be subject to withdrawal on signature of any one of the undersigned. Any item payable to one or more of the signers, hereof, may with or without endorsement, be deposited to this account subject to all the terms thereof: This account is subject to all rules, regulations, service charges and conditions now in effect at the Bank, or which may be hereafter adopted or imposed."

The pertinent portion of the joint account agreements with the National Bank of Commerce in Memphis was as follows:

"This account is opened upon the following terms and conditions agreed to by the parties between themselves and with the bank, to wit: This account and all money to be credited to it belong to the depositors as joint tenants with right of survivorship and will be the absolute property of the survivor, either party or the survivor to draw; * * *."

█ The question now posed to us is: Where a confidential relationship does not exist between the parties and where no fraud has been committed or undue influence used, is the burden of proof on the survivor of a joint account with survivorship rights, to go forward and beyond the written agreement and show by some other source that the funds placed in the account by another were intended as a gift? We think not. Absent proof of fraud, undue

influence or the existence of and an overreaching in a confidential relationship, the written agreement signed by the deceased speaks just as loudly and clearly as if the deceased herself took the stand and orally expressed the words written on the paper.

We are of the opinion that the Chancellor erred in placing that burden of proof on the defendant in this case. The burden of proof was on the complainant to show fraud, undue influence and/or the existence of a confidential relationship. These things the complainant did not show. Therefore, no burden was placed on the defendant.

█ However, the complainant did seek to prove that it was not the intention of the deceased to create a joint account with the right of survivorship. The burden of proving this allegation was on the complainant. We have examined the record to ascertain whether or not the complainant has carried that burden. Complainant sought to show this mainly by defendant's statements and actions. It was complainant's position that defendant never considered the joint account as her own as a gift from her mother.

Complainant admitted that her mother, sometime before her death, told her that the subject accounts were held jointly with the defendant. According to the complainant, Mrs. Reilly gave as her reason for such action, her belief that there should always be two names on an account. No other discussion about the accounts was had by complainant with anyone until after Mrs. Reilly's death.

Complainant's proof showed approximately two days before the death of Mrs. Reilly, Mrs. Frassinelli had withdrawn practically all of the funds out of the two savings accounts. Complainant testified that after the mother's death, Mrs. Frassinelli advised her of this action and gave as her reason for so doing, a desire to avoid paying inheritance tax, but stated that the money was the property of "both of us"

and there would be no problem. Thereafter, according to complainant's testimony, complainant and the defendant went together and set up joint accounts in their names in the amount of $8,000.00 each at separate banks. Sometime thereafter, complainant learned that the $16,000.00 had been withdrawn from the banks. Shortly thereafter suit was filed.

On cross-examination, complainant was asked if she and defendant had not made an agreement when the $16,000.00 was deposited in their joint names. Complainant first denied the existence of an agreement, but on further cross-examination admitted there had been an agreement. Then she testified as follows:

"Q. Will you state to the Court what that agreement was?

A. She told me that my mother wanted her to have the house and car but I did not see any connection between that and the bank accounts, whether or not the money was put into two accounts; I didn't think there was any connection at all.

Q. What was the agreement then for her putting this money in these two accounts with your name on it along with hers?

A. Putting the money in the two accounts? Yes, I went along with it.

Q. Well, on what basis? Did you agree to do anything?

A. I don't believe I agreed to do that because if I was going to do something else; I don't think there was any connection between the two things.

Q. Well, was there any agreement at all?

A. I had told her that she—it more or less put me in a state of shock when she told me that she was sup-

posed to get the house and the car. Having agreed with her all my life, I went along with it but I went to bed a very unhappy person; and, given time to consider it, I didn't like it. I didn't consider it even.

Q. Well, isn't it a fact that you agreed with your sister that if she put these accounts in the joint names, that you would convey your interest in the house that your mother lived in and owned at the time of her death plus any interest that you might have had in the automobile that your mother left?

A. I don't think so.

Q. You don't think so?

A. No.

Q. Was there anything mentioned about conveying your interest in that house and interest in the automobile?

A. She told me Mother wanted her to have the house and the car and I believe I probably said, "All right, you can have it." But I did not say, "You can have it so I can have that. You can have this so I can have the money." There was no agreement like that.

Q. There was no agreement if she would deposit those accounts—

A. No.

Q. —the money in these accounts, that you would convey your interest?

A. No."

There was then introduced into evidence a letter written by Mrs. Iacometti to Mrs. Frassinelli, the pertinent portion is as follows:

"This is going to be one of the most difficult letters I have ever written so I might as well get to the point. I am sorrier than ever now that Mother didn't have a will as things would have been so

much simpler. I do not like going against her wishes but I am sure also she would not want to cause any trouble. Had there been a will, Lou (Mrs. Iacometti's husband is Louis Iacometti) would have readily agreed to it, but since there wasn't, I am going to renege on my word and let the State handle the estate and divide it down the middle. I know that Lou is not the one involved, that it is really between you and me. It is not the money—that doesn't matter. It is the fact that Lou feels had our positions been reversed, I would have let the law settle things evenly rather than say anything. To him it appears that I have been pushed aside. I don't think Mother intended it to be that way but I don't quite understand how she figured like she did. * * *" (Parenthetical insertion supplied)

Subsequent to the mailing and the receipt of the before mentioned letter, Mrs. Frassinelli withdrew the $16,000.00 from the joint accounts and placed the funds in her name alone.

Defendant testified that after the joint accounts were created by her mother, she (defendant) never touched the funds, until the day before Mrs. Reilly's death. (Mrs. Reilly had been in good health until five days before her death when she suffered a stroke). Defendant testified that after consultation with her mother's doctor she withdrew $20,000.00 from the accounts as she thought she would need it to care for her mother and that she did not know that her mother was going to die as soon as she did. After her mother's death, defendant used joint account funds to pay the burial and last illness expenses.

When the complainant came to Memphis for the funeral, defendant advised her sister that Mrs. Reilly had intended to go to the office of Judge Harry Pierotti, then a practicing lawyer of the Memphis Bar, to make out her will. Three days before her appointment with Judge Pierotti, she was stricken. Defendant further testified that Mrs. Reilly had told her that defendant was to have the house and car. Defendant conveyed this information to complainant. Defendant further testified that in order to comply with the mother's unwritten wishes and in an attempt to make things "come out even", it was agreed that complainant would transfer her interest in the homeplace on Garland Street and any interest in the automobile; in turn for which defendant would give to complainant $8,000.00. Thereafter two $8,000.00 joint accounts were opened at different banks in the names of complainant and defendant. On one of the accounts, the complainant was first named thereon and received the bank statements, on the other account, complainant did not receive the bank statements as we presume from the testimony that defendant was first named. Upon receipt of the letter from complainant wherein she stated she was going to renege on the agreement, defendant withdrew $8,000.00 from each of the joint accounts and placed those funds in accounts in defendant's name alone.

We are of the opinion that this proof as a whole will not sustain a finding that a constructive trust was intended to be created by Mrs. Reilly when she caused the joint accounts to be created in her name and in the name of defendant. There is no proof in this record that *Mrs. Reilly* intended to do anything but what she did, that is, create a joint account with the right of survivorship in the defendant.

Counsel for appellee insists that this case closely resembles the case of Lamb, Executor v. Lamb, unreported opinion of the Western Section of the Court of Appeals, filed March 20, 1969. In that case a joint account had been opened in the name of the deceased and one of her sons. In an opinion of this Court authored by Judge Carney, it was held that the deceased had not intended to create a joint account with survivorship rights. Other than being a family dispute over a joint account, the Lamb case and the instant one are dissimilar. Mrs. Lamb was 84 years of age and

bordering on senility. An unquestioned confidential relationship existed between her and the one who was jointly named on the account. The jury found that Mrs. Lamb did not understand the significance of the joint account agreement. The joint account agreement was repugnant to the terms of Mrs. Lamb's Will wherein she provided that the son who held the joint account with her was to receive no cash, but was to get the homeplace and dairy farming equipment. The other son was to get what cash she had.

In the instant case, no confidential relationship existed. Mrs. Reilly was not senile, but on the contrary was perfectly capable of tending her own affairs until the day she had her stroke. There is not a scintilla of proof that she did not understand what she was signing when the joint account cards were executed. There is no writing in evidence signed by the deceased which would indicate that she ever had any other intention than the one expressed in the agreement. Actually we have little else than the joint account agreements from which to glean the deceased's intent.

The acts of the complainant and the defendant after the death of Mrs. Reilly as set out in this opinion do not, in our opinion, constitute sufficient proof that would warrant a holding that a trust was intended to be created by Mrs. Reilly so that the joint account funds would be available only for her use during illness or incapacitation in her lifetime, with any remaining balance to be equally divided between her children.

Therefore, for the reasons stated, the Assignments of Error are sustained. The decree of the Chancellor is reversed and the Original Bill shall be dismissed.

Costs of appeal and below are adjudged against appellee.

So order.

CARNEY, P. J., and MATHERNE, J., concur.