IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 11, 2002 Session

**NORMA JEAN PENDOLA, BEVERLY KAY STEWART,
DORIS FAYE SAJER, AND WILLIAM H. MILLIGAN, JR.**
v.
**SHIRLEY ANN BUTLER**

Appeal from the Chancery Court for Perry County
No. 3949     Russ Heldman, Chancellor

No. M2002-00131-COA-R3-CV - Filed July 31, 2003

This is an undue influence and fraud case. The father executed a will leaving his personal and real property to one daughter, with the remainder of his estate to be divided among all five of his children. The daughter moved from Chicago to Tennessee to care for the father. The father added the daughter's name to his checking account and bought a mobile home in which he and the daughter lived. The daughter utilized money from the joint checking account for her personal benefit. Later, the father executed a power of attorney in the daughter's favor. The daughter then transferred one of the father's certificates of deposit to herself. When the father died, no funds remained to be divided among the five siblings. The father's other four children filed suit against the daughter, alleging undue influence. The trial court referred the case to a special master, who found there was no confidential relationship prior to execution of the power of attorney. The special master found, however, that a confidential relationship existed after the execution of the power of attorney. The trial court found that the daughter rebutted the presumption of undue influence and invalidity of the transaction that took place after execution of the power of attorney. The trial court then concurred in the special master's findings. The plaintiffs appeal. We affirm as to the transactions prior to execution of the power of attorney. We reverse as to the transaction after execution of the power of attorney, concluding that the presumption of the invalidity of that transaction was not rebutted by clear and convincing evidence of the fairness of the transaction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part
and Reversed in Part**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Ricky L. Wood, Parsons, Tennessee, for appellants, Norma Jean Pendola, Beverly Kay Stewart, Doris Fay Sajer, and William H. Milligan, Jr.

Tommy E. Doyle, Linden, Tennessee, for appellee, Shirley Ann Butler.

**OPINION**

In 1991, Shirley Ann Butler ("Butler") moved from Chicago to Tennessee to be closer to her father, William H. Milligan, Sr. ("Father"). Father's other four grown children, Norma Jean Pendola ("Pendola"), Beverly Kay Stewart, Doris Fay Sajer, and William H. Milligan, Jr. (collectively "the Plaintiffs"), did not live in the same city as Father. Pendola lived in another town in Tennessee, and the other three lived outside Tennessee.

On June 17, 1994, Father executed his Last Will and Testament ("Will"). In his Will, Father bequeathed all of his real and personal property to his daughter, Butler. The Will specified that the remainder of his estate was to be divided equally among Butler and her four siblings.

In September 1997, Father added Butler's name to his checking account, held jointly with right of survivorship. The following month, Father paid $53,900 for a new mobile home for him and Butler. In December 1998, using funds from the joint checking account, Butler loaned $41,573.35 to her boyfriend, Tilo Elberly ("Elberly"), so that he could purchase a home. Elberly repaid the money to Butler, not to Father. Also in December 1998, using funds from the joint checking account, Butler purchased a $75,000 certificate of deposit in her name. In addition, she transferred $10,000 from the joint checking account into her personal account.

On January 18, 1999, Father granted Butler a general power of attorney. Two days later, utilizing the power of attorney, Butler transferred to herself a certificate of deposit owned by Father in the amount of $70,270.26. Days later, on January 30, 1999, Father died.

After Father's death, Butler's siblings, the Plaintiffs, learned that there was nothing left in Father's estate to be distributed to them. Consequently, the Plaintiffs filed suit against Butler. The Plaintiffs alleged that Butler had a confidential relationship with Father and exerted undue influence over him to obtain his signature on the power of attorney. They argued that Father did not intend to deprive them of their share of his estate. The Plaintiffs asserted that Butler breached her fiduciary duty to her Father and committed fraud, and they sought the return of the funds to Father's estate.

The trial judge referred the case to a Special Master. The Special Master was ordered to hold a hearing and issue a report.[1]

At the hearing before the Special Master, Norma Jean Pendola, Butler's sister, testified that she lived in Tennessee in a county adjacent to the county in which Butler and Father lived. She said that she had a normal relationship with Father, and that she spoke with him once a week. She had

---

[1]Tennessee Rule of Civil Procedure 53 allows the court to refer matters to a Special Master. Among other powers, the Special Master can conduct hearings, rule on evidentiary issues, and procure witnesses. Tenn. R. Civ. P. 53.01-53.03. "The master shall prepare a report upon the matters submitted by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report. . . ." Tenn. R. Civ. P. 53.04 (1).

no knowledge of the financial transactions by Butler for Butler's benefit, or that Father had given Butler a power of attorney. Pendola was aware that Butler had loaned Elberly over $41,000, and asserted that Father would not have loaned money to him. Pendola stated her belief that Father did not know Butler had transferred his assets to Butler, and asserted that Father would not have intended that the other children would be excluded from inheriting from him. Pendola acknowledged that Father was an independent man, and that Father never complained that Butler was attempting to pressure or coerce him.

Another sister, Beverly Kay Stewart ("Stewart"), testified that she knew Butler was handling Father's finances, but believed that Father wanted his estate distributed in accordance with his Will. Stewart acknowledged that, at all times, Father was capable of handling his financial affairs.

The Special Master also heard testimony from Naomi Fletcher ("Fletcher"), an employee of the bank at which Father had the joint checking account. Fletcher said that, on December 29, 1998, Butler purchased a $75,000 certificate of deposit using funds from the joint checking account, transferred $10,000 from the joint account to her personal account, and purchased another certificate of deposit for $7,000. Father was not with Butler when these transactions occurred. Fletcher also said that Butler procured a cashier's check from the joint checking account, written to Tinker Home Center, in the amount of $41,573. On December 20, 1998, a certificate of deposit valued at over $70,000, originally in Father's name, was reissued to Butler.

Butler's boyfriend, Elberly, testified as well. He said that he borrowed $41,500 from Father and Butler to purchase a mobile home. He repaid the funds to Butler, not to Father or Father's estate. Elberly asserted that, when Father learned that Pendola and the other siblings were considering moving Father to a convalescent home, Father stated, "Well, then they won't get nothing, will they?"

Finally, the Special Master heard testimony from Butler. Butler testified that, approximately three years after she started living with Father, she started to write checks to pay Father's bills, with Father signing the checks. Over Butler's protests, Father put Butler's name onto his checking account so that Butler could handle paying his bills. Butler said that her sister Beverly Kay Stewart stopped calling Father when Father and Butler began living together. Butler's brother, to her recollection, only contacted Father two times in the past ten-year period, both times to borrow money. After Pendola and her husband moved to Tennessee in 1994, they visited Father once or twice a week.

Butler said that, a year before the power of attorney was executed, Butler and Father had discussed it. Father later asked Butler to have a power of attorney drawn up by his lawyer. When it was executed, a staff member of the skilled nursing facility in which Father was staying witnessed Father's signature on the power of attorney. After Father signed it, he told Butler, "You know what to do." Butler indicated that, although Father did not expressly state it, he wanted Butler to keep his funds from going to the nursing facility or to the government. Butler acknowledged that she used the power of attorney to transfer a certificate of deposit from Father to herself. Butler asserted that,

in 1996 or 1997, in talking with Butler about the other siblings, Father said, "They cannot even offer a hand to help me when I am living. I'll be damned if they are going to benefit from my death."

In her deposition testimony, Butler said that Father's intentions regarding his Will had not changed, that is, that Father wanted his assets distributed according to his Will. At the hearing before the Special Master, however, Butler equivocated on this issue, saying that it was possible that Father's intentions had changed. She admitted that Father never told her that he wanted to change his Will.

After the hearing, the Special Master made the following findings:

EACH witness testified undisputed that [Father] was a strong willed person who could not be easily influenced by anyone. EACH witness testified that [Butler] was the primary care taker of [Father]. . . . Testimony showed that the other children did not come to see [Father] very often. Mrs. Pendola came more often because she lived in Parsons, Tennessee. Some had not seen him or called him in years. I believe [Father] was aware of this fact and was hurt and probably did get angrier as time went by. . . . I believe [Father] trusted and depended on [Butler] to take care of him and his business affairs. I believe she did this as a caring and loving daughter.

. . . .

No confidential relationship giving rise to [a] presumption of undue influence existed between [Father] and his daughter, Shirley Ann Butler in the period prior to [Father's] granting to her a power of attorney, but did exist after the power of attorney, on January 18, 1999.

Thus, the Special Master found no confidential relationship prior to the execution of the power of attorney, but found that a confidential relationship existed after the power of attorney was signed.

After the Special Master's report was filed, pursuant to Rule 53.04 of the Tennessee Rules of Civil Procedure, the Plaintiffs filed objections to the Special Master's report. They argued that the Special Master erred in finding that there was no confidential relationship between Father and Butler prior to execution of the power of attorney. The Plaintiffs also noted that the Special Master's report included no findings of fact or conclusion of law regarding the Plaintiffs' allegations that Butler breached her fiduciary duty and that her actions were fraudulent. The trial court rejected the Plaintiff's objections to the Special Master's report.

Butler moved to add a conclusion to the Special Master's report stating that Butler, by clear and convincing evidence, had rebutted the presumption of undue influence, by proof of fairness of the transaction and lack of undue influence, of the transactions occurring after execution of the

power of attorney. The trial court granted her motion and added the following language to the Special Master's report:

> . . . [Butler] has proven by clear and convincing evidence that the presumption of undue influence in regard to what occurred after the execution of the power of attorney on January 18, 1999, is rebutted by proof of fairness and the lack of undue influence.

She also filed a separate motion to amend, arguing that no confidential relationship was created when Father gave the power of attorney to Butler. The trial court, however, denied the motion to amend. The trial court then approved and adopted the Special Master's report with the above-quoted conclusion. Consequently, the trial judge dismissed the Plaintiffs' complaint. From this order, the Plaintiffs appeal.

On appeal, the Plaintiffs argue that there was a confidential relationship between Butler and Father prior to execution of the power of attorney, and that Butler did not show by clear and convincing evidence the fairness of the transfer of assets prior to execution of the power of attorney. As to the transfer of assets that occurred after execution of the power of attorney, the Plaintiffs assert that the trial court erred in finding that Butler overcame the presumption of undue influence by showing by clear and convincing evidence that the transaction was fair. Plaintiffs also seek their attorney's fees as they relate to this appeal.

We first address the Plaintiffs' argument that the trial court erred in finding that there was no confidential relationship between Butler and Father prior to execution of the power of attorney. In the case at bar, the Special Master made a finding of fact that no confidential relationship existed between Butler and Father prior to execution of the power of attorney, and the trial court concurred.[2] Concurrent findings of fact by the trial court and the Special Master are "conclusive on appeal, except where the finding is on an issue not appropriate for referral, where it is based on an error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence." *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996) (citing *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995)); *see also* Tenn. Code Ann. § 27-1-113 (2000);[3] *Parks v. Eslinger*, No. M1999-02027-COA-R3-CV, 2003 Tenn. App. LEXIS 94, at *17 (Tenn. Ct. App. Feb. 4, 2003). If the record contains material evidence to support the concurrent findings of fact by the Special Master and the trial court, then these findings of fact must be affirmed. *Varnadoe*

---

[2]Plaintiffs, in their appellate brief, intimate that the trial court improperly referred the case to the Special Master because the issues presented mixed questions of law and fact. They point to no place in the record, however, in which this objection was raised to the trial court. Thus, for appellate purposes, the argument is waived. *See Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996).

[3]Section 27-1-113 of the Tennessee Code Annotated states in part: "Where there has been a concurrent finding of the master and chancellor . . . the court of appeals shall not have the right to disturb such finding. . . ." Tenn. Code Ann. § 27-1-113 (2001).

*v. McGhee*, No. W2001-00075-COA-R3-CV, 2001 Tenn. App. LEXIS 949, at *9 (Tenn. Ct. App. Dec. 27, 2001).

Under Tennessee law, a confidential relationship is created when one person has dominion and control over another. *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002) (citation omitted). Dominion and control has been described as a relationship in which "confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party." *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989) (quoting *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973)). "The burden of proof regarding a confidential relationship rests upon the party claiming the existence of such a relationship." *Childress v. Currie*, 74 S.W.3d at 328 (citation omitted). Generally, the doctrine of undue influence does not apply in the absence of a confidential relationship. *Gustafson v. Baldridge*, No. 02A01-9102-CV-00009, 1991 Tenn. App. LEXIS 918, at *11 (Tenn. Ct. App. Nov. 27, 1991) ("For the doctrine of undue influence to be applicable there must be a confidential relationship in existence whereby one party . . . is in a position, because of the confidential relationship, to exercise undue influence over the mind and the will of the other . . . ."); *Simmons v. Foster*, 622 S.W.2d 838, 840 (Tenn. Ct. App. 1981); 25 Am. Jur. 2d *Duress* § 31 (1996) ("In order to constitute undue influence, it is generally necessary for there to be . . . a confidential or fiduciary relationship . . . .").

In the case at bar, Butler testified that Father insisted on putting her name on his checking account, over her objections. There was much testimony, including testimony from the Plaintiffs, that Father was an independent person who was not easily persuaded into doing something he did not want to do. Under these circumstances, clearly there was material evidence to support the concurrent finding of fact by the Special Master and the trial court that no confidential relationship existed between Butler and Father prior to the execution of the power of attorney.

The Plaintiffs additionally assert that, notwithstanding the absence of a confidential relationship, they may challenge the validity of the joint checking account and the validity of the transfers from the joint checking account when there is evidence of fraud, undue influence, or lack of capacity. *Powell v. Moore*, No. W1998-00001-COA-R3-CV, 2000 Tenn. App. LEXIS 108, at *9 (Tenn. Ct. App. Feb 17, 2000); *see also Lowry v. Lowry*, 541 S.W.2d 128, 133 (Tenn. 1976). In *Powell*, the court found a confidential relationship and that the dominant party in the confidential relationship had exerted undue influence and had breached her fiduciary duty. *See Powell*, 2000 Tenn. App. LEXIS 108, at *10-11. In this case, the concurrent finding of fact by the Special Master and the trial court was that no confidential relationship existed prior to execution of the power of attorney. We are bound by this finding on appeal. Therefore, prior to execution of the power of attorney, undue influence and breach of fiduciary duty are not at issue. Likewise, there is no evidence that Father lacked capacity to establish the joint account or that Butler fraudulently induced him to set up the joint account.

Consequently, we must affirm the trial court's holding as to the transactions initiated by Butler prior to execution of the power of attorney. The transactions include the December 1998 loan to Elberly, the purchase of the $75,000 certificate of deposit, and the $10,000 check Butler wrote from the joint checking account to herself.

As to the finding of a confidential relationship after execution of the power of attorney, Butler argues on appeal that no confidential relationship was created when Father gave her the power of attorney. Here, the Special Master made a finding of fact, and the trial court concurred, that there was a confidential relationship between Butler and Father after execution of the power of attorney. Because there is material evidence in the record to support this concurrent finding, we affirm the finding of a confidential relationship after the power of attorney was executed.[4] Plaintiffs assert on appeal that the trial court erred in finding that Butler, by clear and convincing evidence, had rebutted the presumption of undue influence as to the transaction that occurred after the execution of the power of attorney, the transfer of Father's $70,270.26 certificate of deposit to Butler. Under Tennessee law, "a presumption of undue influence arises where the dominant party receives a benefit from the other party." *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 793 (Tenn. Ct. App. 2001). The presumption of undue influence is overcome only where the dominant party can show by clear and convincing evidence that the transaction was fair. *Id.; see also Estate of Glasgow v. Whittum*, No. M2001-02263-COA-R3-CV, 2002 Tenn. App. LEXIS 889, at *13 (Tenn. Ct. App. Dec. 19, 2002). For evidence to be clear and convincing, it must

> eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 182, 188 (Tenn. Ct. App. 1995). Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d 438, 441 (Tenn. Ct. App. 1981); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992).

*In re C.W.W., N.W.W., Z.W.W., & A.L.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000).

In the case at bar, the Special Master made no finding or conclusion as to whether Butler had overcome the presumption of undue influence regarding the transaction that occurred after execution of the power of attorney. Upon Butler's motion, the trial court later added such a conclusion to the

---

[4]Generally, as a matter of law, the execution of a power of attorney creates a confidential or fiduciary relationship between the grantor and the attorney-in-fact. *Moore v. Moore*, No. M2001-03144-COA-R3-CV, 2003 Tenn. App. LEXIS 47, at *8 (Tenn. Ct. App. Jan. 23, 2003). An exception to this may arise where the relationship between the grantor and the attorney-in-fact is a "close family" relationship such as husband-wife or parent-child. *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 794-95 (Tenn. Ct. App. 2001).

Special Master's report, and then concurred in the finding in the report. This does not, however, make this conclusion a concurrent finding by the Special Master and the trial court that would be subject to the higher standard of review for such findings. Thus, we review the record to determine if Butler overcame the presumption of undue influence by proving the fairness of the transaction by clear and convincing evidence.

Two days after Father executed the power of attorney, Butler utilized it to transfer to herself a certificate of deposit owned by Father in the amount of $70,270.26. In the hearing before the Special Master, while there was some evidence that the Plaintiffs' failure to help care for Father and their discussion of moving Father to a nursing facility angered him, Butler acknowledged that Father never expressed to her an intent to change his Will, which distributed property such as the certificate of deposit to Father's five children. Her only explanation for the transfer was that Father wanted to keep his funds from being paid to the government or to the nursing facility in which he lived at the time. Butler testified that, after executing the power of attorney, Father told her, "You know what to do." This hardly amounts to clear and convincing evidence that the transaction was fair or that Father intended for the certificate of deposit to be transferred to Butler, to the exclusion of Father's other children. This is particularly true in view of the substantial transfers that took place prior to execution of the power of attorney, all of which benefitted Butler, to the exclusion of the Plaintiffs. Under these circumstances, we must conclude that Butler did not show by clear and convincing evidence that her transfer of Father's $70,270.26 certificate of deposit to herself was fair. Consequently, the trial court's decision on this issue must be reversed.

The Plaintiffs' request for attorney's fees as they relate to this appeal is denied.

The decision of the trial court is affirmed in part and reversed in part as set forth above. Costs are taxed to the appellee, Shirley Ann Butler, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, J.