IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2008 Session

# BANC OF AMERICA INVESTMENT SERVICES, INC., v. CHRISTINA TUCKER DAVIS, as Executrix of the Estate of STEPHEN G. TUCKER, deceased, and DOROTHY TUCKER WATERS, and TERESA CURETON

Direct Appeal from the Chancery Court for Hamilton County
No. 02-0662     Hon. W. Frank Brown, Chancellor

No. E2008-00559-COA-R3-CV  - FILED FEBRUARY 5, 2009

In this interpleader action, plaintiff held an IRA account established by decedent. When decedent died dispute arose between his companion and his blood relatives, because he had designated his companion as the sole beneficiary of his IRA account, but in his Will he gave the IRA account to his relatives. The contending parties raised this dispute in their pleadings and after an evidentiary hearing, the Trial Court ruled that the designee on the IRA account was entitled to the proceeds because the relatives did not carry the burden of proof to establish undue influence was exercised on the decedent when he established the IRA account. We affirm the Judgment of the Trial Court and remand with the cost of the cause taxed to appellants.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Bruce D. Gill, and James F. Exum, III., Chattanooga, Tennessee, for appellants.

James R. Kennamer, Chattanooga, Tennessee, for appellee.

**OPINION**

Banc of America Investment Services, Inc., ("Banc") brought this Interpleader action against defendants Christina Tucker Davis, as Executrix of the Estate of Stephen G. Tucker, deceased, Dorothy Tucker Waters, and Teresa Cureton. Banc alleged that decedent maintained an IRA account through the Banc's Chattanooga office, and Davis was the decedent's sister, and executrix and beneficiary of his estate pursuant to his will. Further, that Waters was decedent's mother and also a beneficiary of his estate, and that Cureton was decedent's former girlfriend and a beneficiary of his IRA account.

Banc alleged that on September 29, 1999, decedent opened an IRA at its Chattanooga branch, and listed Cureton as the sole beneficiary. Then, on September 2, 2000, decedent executed his Last Will and Testament, leaving 25% of his IRA to each of the following: Davis, Waters, Toby Tucker (his son), and Joey Tucker (his son). On December 22, 2000, decedent appointed his sister, Christina Tucker Davis, to be Executrix of his estate, and decedent died on December 26, 2000.

Plaintiff alleged that on November 21, 2001, Cureton submitted a request seeking payment of the funds from the IRA, and Davis and Waters contested Cureton's entitlement to the proceeds, and claimed superior rights under the Will. The value of the IRA was approximately $119,791.00, and Banc sought direction from the Court on how to distribute the funds.

Davis and Waters' pleadings asserted that Cureton was not a valid beneficiary of the IRA because the beneficiary designation was procured through undue influence. Alternatively, the Court found that Cureton was the lawful beneficiary of the IRA, and the Court should offset the value of decedent's assets which Cureton converted to her own use after his death.

Cureton answered, asserting that she was the lawful beneficiary of the IRA, and filed a Counterclaim, asking for attorney's fees and interest on the funds, which she claimed were being wrongfully withheld from her. Cureton filed a Motion for Summary Judgment, and attached affidavits. The Court then entered a Memorandum Opinion which discussed the requirements for finding that undue influence was exercised, and found that a presumption of undue influence had arisen, based on the fact that Cureton and the decedent had a confidential relationship, that there were "suspicious circumstances" surrounding the designation of Ms. Cureton as beneficiary (i.e. decedent's mother's name was redacted from the form, and decedent later designated the funds to go to someone else in his Will).

The Court found that the affidavits filed by Cureton did not establish, by clear and convincing evidence, that the transaction was fair or that decedent actually received independent advice. The motion for summary judgment was denied.

The trial was held on December 13, 2007. The parties and other witnesses testified at the evidentiary hearing and the Trial Court then entered a Memorandum Opinion and Order and found that Davis was the named Executrix of decedent's estate, and that Cureton was decedent's

girlfriend. The Court held that Cureton and decedent lived together, with some periods of separation, for about 13 years, and on September 29, 1999, decedent met with Whitten of Banc, and completed an IRA application, and that decedent listed Cureton and Waters as equal 50/50 beneficiaries. The Court found that decedent returned to Banc later that day, and had scratched through Waters' name and left Cureton the only beneficiary.

The Court held that decedent suffered from diabetes, and was hospitalized in the summer of 2000. Decedent was later placed in a nursing home, and returned to the hospital before he died. The Court said that for 5-6 months before his death, decedent's relationship with Cureton was strained at times, and that Davis spent a lot of time assisting her brother during his final months.

The Court found that decedent passed away on December 26, 2000, and subsequently, Cureton applied to Banc to receive the proceeds of the IRA.

The Court found that the IRA application executed by the decedent stated that it would remain in effect until another properly executed form was delivered to National Financial Services Corporation, and that the parties agreed that decedent never executed any change of beneficiary form. The Court held that the document stated that its terms would be governed by the law of Massachusetts, and that Massachusetts enforced a contract's requirements for changing a beneficiary designation, (and that Tennessee does as well). The Court held that the contract required another properly executed beneficiary form, and that no such form was executed. The Court noted that the provisions of the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq.*, stated that ERISA pre-empted any state statutes to the contrary, and further provided that retirement plans must be administered in accordance with plan documents. Thus, the Court reasoned, just as a state statute could not change the provisions of this IRA plan, neither could decedent's Will.

As to the allegations of undue influence by Cureton, the Court found that the prior summary judgment ruling was not *res judicata* on the issue of a confidential relationship, because the Court had allowed Cureton to amend her answer to expressly deny this relationship. The Court noted that proof of a confidential relationship was not enough to show undue influence, but there was also a requirement of other suspicious circumstances that would give rise to the presumption.

The Court found that Davis had failed to show a confidential relationship between Cureton and decedent, and observed that just because they lived together was not sufficient, and noted that even familial relationships were not per se confidential without the requisite showing of dominion and control. The Court held that decedent had sufficient assets and income of his own such that he was not financially dependent on Cureton, and there was no proof that he was physically dependent on her either. The Court found that Cureton and decedent "occupied a relationship similar to many married couples", and they lived together, purchased real estate together, and held themselves out as married. Also, that when decedent filled out IRA application he had the benefit of independent advice, and Cureton testified that she did not know he had made her the sole beneficiary until after they left the bank.

-3-

In conclusion, the Court ruled in favor of Cureton and dismissed Davis' cross-claim against Cureton, as there was insufficient proof that Cureton had taken anything from decedent. The issue raised on appeal is whether a confidential relationship existed between decedent and Cureton?

The parties agree that *Kelley v. Johns*, 96 S.W.3d 189 (Tenn. Ct. App. 2002), is the lead case regarding undue influence. In that case, this Court explained:

> Invalidating a will because of undue influence is generally not a simple undertaking. While undue influence can be proved either by direct or by circumstantial evidence, direct evidence is rarely available. Thus, in most cases, the contestants establish undue influence by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act. The courts have refrained from prescribing the type or number of suspicious circumstances necessary to invalidate a will because of undue influence. Instead, they have pointed out that the issue should "be decided by the application of sound principles and good sense to the facts of each case."

> * * *

> The suspicious circumstances most frequently relied upon to establish undue influence are: (1) the existence of a confidential relationship between the testator and the beneficiary; (2) the testator's physical or mental deterioration; and (3) the beneficiary's active involvement in procuring the will. In addition to proof of a transaction benefitting the dominant person in a confidential relationship, other recognized suspicious circumstances include: (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator.

> The burden of proof is on the contestant in a will contest case. Without direct evidence of undue influence, a contestant must establish the existence of more than one suspicious circumstance to make out a prima facie case of undue influence. Proof of a confidential relationship alone will not support a finding of undue influence. However, if a contestant has proved the existence of a confidential relationship, together with a transaction that benefits the dominant party to the relationship or another suspicious circumstance, a presumption of undue influence arises that may be rebutted only by clear and convincing evidence.

> * * *

> Confidential relationships can assume a variety of forms, and thus the courts have

been hesitant to define precisely what a confidential relationship is. In general terms, it is any relationship that gives one person the ability to exercise dominion and control over another. It is not merely a relationship of mutual trust and confidence, but rather it is one

where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party.

*Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App.1973).

Fiduciary relationships are confidential per se because of the legal status of the parties. They automatically give rise to a presumption of undue influence with regard to transactions that benefit the fiduciary. Examples of such fiduciary relationships include that between guardian and ward, attorney and client, or conservator and incompetent. Relationships not fiduciary in nature, even those that are inherently confidential, such as those between family members, are not confidential per se and require proof of the elements of dominion and control in order to establish the existence of a confidential relationship.

Accordingly, evidence that two persons are members of the same family, without more, lends no support to an undue influence claim. Proof that one family member exercised dominion and control over another establishes the existence of a confidential relationship but does not make out a prima facie claim of undue influence. In addition to proving the existence of a confidential relationship between two family members, a will's contestant must establish at least one other suspicious circumstance, such as a transaction benefitting the dominant party in the confidential relationship.

*Id*. at 195-197 (internal citations omitted).

Appellant argues that she proved the existence of a confidential relationship between decedent and Cureton, because decedent was disabled and Cureton provided transportation and income to decedent during certain periods of time, and because there was evidence that Cureton was "manipulative". However, there was testimony that decedent was able to drive himself around until shortly before his death, that he began receiving his own disability income, received income from odd jobs, and had his own assets at all times. Moreover, he was always mentally alert (even described as "brilliant") and transacted his own business. The evidence established that Cureton was also disabled and only had $400.00 per month income. She strongly denied that she influenced decedent's decision to make her the sole beneficiary of the IRA. The evidence does not preponderate against the Trial Court's finding that no confidential relationship existed between Cureton and decedent. Tenn. R. App. P. 13(d).

The Trial Court noted, assuming *arguendo* a confidential relationship had been shown, that fact alone would not be enough to invalidate the beneficiary designation because other suspicious circumstances must be shown, such as Cureton's active participation in procuring the

beneficiary designation, a lack of independent advice, or secrecy concerning the transaction. We affirm the Trial Court's Judgment in upholding the terms of the IRA contract.

The cause is remanded with the cost of the appeal assessed to the appellants, Davis, Tucker and Waters.

_____
HERSCHEL PICKENS FRANKS, P.J.